330 So.2d 3 (1976)
John A. WHITE, Appellant,
v.
STATE of Florida, Appellee.
No. 45805.
Supreme Court of Florida.
March 24, 1976.
*4 Phillip A. Hubbart, Public Defender and Kathleen Gallagher and Michael L. Von Zamft, Asst. Public Defenders, for appellant.
Robert L. Shevin, Atty. Gen, and Michael M. Corin and Lee Elzie, Asst. Attys., Gen., for appellee.
TENCH, Circuit Judge.
This is a direct appeal from the Circuit Court of Dade County which held that Florida Statutes Section 877.03[1] is constitutional and is not in violation of the first and fourteenth amendments to the United States Constitution or article I, sections 4 and 9 of the Florida Constitution. We have jurisdiction, Fla. Const. art V, § 3(b)(1). The parties will be referred to as in the court below.
The defendant with his mother and a friend entered the Perrine Substation of the Public Safety Department of Dade County for the purpose of providing bail for his father, who moments before had been brought into the substation after being arrested on a bench warrant. Thereafter the evidence is in conflict, but as finders of the facts the jury resolved it in favor of the state's witnesses, whose testimony we summarize below.
The defendant demanded his father's immediate release on bail saying, "I want to get my fucking father, and I come to get him right now." He was advised that it would require approximately 15 to 20 minutes to complete the booking procedure for *5 his father, to determine from the computer the amount of the bond, and to complete the arrest form. To this delay the defendant took violent exception.
Officer Lawrence testified that the defendant "went  almost  into a fit," and that he was "screaming at the top of his lungs." He continued "screaming at the top of his lungs, using all sorts of language and calling" the officers "mother-fucking pigs" for several minutes.
According to Officer Holloway, the conduct of the defendant "was affecting the entire station." The commotion was taking place in the lobby of the substation, but it was loud enough to alert Officer Hodges who was behind a closed door in the adjacent squad room and to cause him to come into the lobby. Repeatedly, the defendant was requested to modify his conduct or to leave the station, and Officer Lawrence advised him to leave the station or at least to quiet down and have a seat. At last one of the officers approached the defendant and announced he was putting him under arrest. A fight followed, and the defendant was charged with disorderly conduct and with resisting arrest with violence. After trial by jury he was found guilty of both charges.
The defendant urges four (4) points on appeal. The first may be disposed of with brevity.
We find no merit in his contention that the trial court erred in denying his motion for judgment of acquittal at the close of the state's case on the ground that the evidence was insufficient to support conviction for disorderly conduct and for resisting arrest. A careful reading of the record convinces us that the jury did not stretch the limits of its discretion in resolving the conflicts in the evidence in favor of the state.
Whether the statute is constitutional on its face against a challenge for overbreadth and vagueness is a question requiring more deliberate examination, for we have a responsibility to avoid a holding of unconstitutionality if a fair construction of the statute can be made within constitutional limits. State v. Beasley, 317 So.2d 750 (Fla. 1975), and cases cited therein. Accordingly, after a careful reading of the controlling cases, we hold the statute constitutional subject to our limited construction.
In determining the narrow line between constitutionally protected speech and that which is unprotected, it is imperative to consider the circumstances in which the words were uttered. Bradshaw v. State, 286 So.2d 4 (Fla. 1973). There, the same statute was under attack for overbreadth and vagueness. The Court pointed out that Bradshaw had "passed the bounds of argument" and had proceeded to incitement to riot. In the instant case, the defendant reached a similar position. His conduct passed the bounds of speech and reached the point where it was disorderly.
In Bradshaw the Court pointed out that "the disorderly conduct statute came into operation only when defendant [Bradshaw's] interest in expression, judged in the light of all the relevant factors, was `miniscule' compared to the particular public interest in preventing that expression or conduct." 286 So.2d at 7. There, the public interest was in preventing a riot; in the instant case, the public interest was in preventing the disruption of the orderly administration of police business in the Perrine Substation.
The statute must not be construed to limit the use of a socially impermissible word merely as a tool of communication. Such expressions are constitutionally protected. That is not to say, however, that the use of constitutionally protected words, when accompanied by aural, nonverbal acts which infringe upon the rights of others to pursue their normal, lawful activities, extends the constitutional protection to such nonverbal acts. The defendant cannot excuse *6 his shouting and screaming to the extent that it "was affecting the entire station" upon the ground that he was using socially impermissible, but constitutionally protected words. The gravamen of his offense was not words, but the acts which accompanied his words.
In this connection it is instructive to examine Beasley, in which this Court was called upon to so construe our riot statute[2] that it would be constitutionally acceptable. In reasoning paralleling our own in this case, the Court pointed out that "[c]onduct which involves a clear and present danger of force or violence is not constitutionally protected even though it is intertwined with protected speech and conduct." 317 So.2d at 753.
We announce specifically that by our limited construction of the statute in question we do not rule out the possibility that some protected speech may provoke violent dissent. Indeed, that is what freedom of speech is about  the right vigorously to advance a minority opinion even though that opinion may anger others and arouse forceful disagreement. Wiegand v. Seaver, 504 F.2d 303 (5th Cir.1974).
In Hess v. Indiana, 414 U.S. 105, 94 S.Ct. 326, 38 L.Ed.2d 303 (1973), the United States Supreme Court dealt with language, similar to that used in the case before us, and rejected the Indiana statute[3] as unconstitutional when attacked for vagueness and overbreadth. There, the sheriff and his deputies were clearing antiwar demonstrators from the street when defendant Hess said, "We'll take the fucking street later," or "We'll take the fucking street again." 414 U.S. at 107, 94 S.Ct. at 328, 38 L.Ed.2d at 306. Factually, the case is distinguishable from the instant case for the testimony showed that Hess's "tone, although loud, was no louder than that of the other people in the area." 414 U.S. at 107, 94 S.Ct. at 328, 38 L.Ed.2d at 306. Thus, while Hess's words may have offended the sensibilities of the sheriff and others who heard them, the words in no way invaded their right to pursue a lawful activity. It is that which distinguishes Hess from the instant case; by their very decibel count the defendant's words did invade the right of others to pursue their lawful activities.
In the leading case of Gooding v. Wilson, 405 U.S. 518, 92 S.Ct. 1103, 31 L.Ed.2d 408 (1972), the United States Supreme Court cited with approval language in Chaplinsky v. New Hampshire, 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031 (1942), denying protection to words "which by their very utterance inflict injury or tend to incite an immediate breach of the peace." 405 U.S. at 522, 92 S.Ct. at 1106, 31 L.Ed.2d at 414. This is the so-called "fighting words" exception to protected speech.
In Chaplinski, and again in Gooding, the Supreme Court made it clear that for a statute such as ours to withstand an attack on grounds of vagueness and overbreadth it must be so construed by our Court that it is not subject to unconstitutional interpretation. "In other words, the statute must be carefully drawn or be authoritatively construed to punish only unprotected speech and not be susceptible of application to unprotected expression." 405 U.S. at 522, 92 S.Ct. at 1106, 31 L.Ed.2d at 414. In Chaplinsky the Court found *7 that New Hampshire had construed its statute[4] as limited to prohibiting "face-to-face words plainly likely to cause a breach of the peace by the addressee," State v. Chaplinsky, 91 N.H. 310, 321, 18 A.2d 754, 762 (1941); but in Gooding Georgia was found not to have so limited its interpretation, Wilson v. State, 223 Ga. 531, 156 S.E.2d 446 (1967). The New Hampshire statute was permitted to stand because the New Hampshire Supreme Court had limited its application to "fighting words", and the Georgia statute[5] fell because of no sufficiently narrow interpretation.
Similarly, in Shuttlesworth v. City of Birmingham, 382 U.S. 87, 86 S.Ct. 211, 15 L.Ed.2d 176 (1965), although the Court refused to convict Shuttlesworth under Section 1142 of the General Code of the City of Birmingham, Alabama,[6] it pointed out that the defect in the section subsequently had been cured by "an explicitly narrow construction," 382 U.S. at 91, 86 S.Ct. at 213, 15 L.Ed.2d at 179, by the Alabama Court of Appeals in Middlebrooks v. City of Birmingham, 42 Ala.App. 525, 170 So.2d 424 (1964).
Shuttlesworth stands for the proposition that the offending section of the Birmingham Code was too broad in making it an offense to stand, loiter, or walk upon any street or sidewalk after the offender was requested by any police officer to move on. The offending section was acceptable only after the Alabama Court of Appeals narrowed its effect by requiring that there must also be a showing of the accused blocking free passage.
We find ourselves in a similar position, and we require that, for conviction under our statute to be acceptable, more must be shown than that the words were offensive to a part of the general population.
In sum, the words used by the defendant are protected even though they may not be acceptable in certain strata of society. It is the degree of loudness, and the circumstances in which they are uttered, which takes them out of the constitutionally protected area. Indeed, his conduct would have been equally disorderly had he merely recited "Mary Had a Little Lamb" in the same tone and under similar circumstances.
We hold that mere words, used as a tool of communication, are constitutionally protected. The protection fails only when 1) by the manner of their use, the words invade the right of others to pursue their lawful activities, or 2) by their very utterance, they inflict injury or tend to incite an immediate breach of the peace. Limited by this construction, we hold the statute constitutional.
The remaining points on appeal raise the questions whether the statute is constitutional as applied to the facts of this case, and whether the jury was properly charged. It is clear that because the trial court did not have the benefit of our restricted interpretation of Section 877.03 it was unable to charge the jury in such manner as to assure the constitutional application of the statute, and the case must *8 be reconsidered in the light of the test we have here adopted.
Reversed and remanded for further proceedings not inconsistent with this opinion.
It is so ordered.
OVERTON, C.J., ROBERTS and ADKINS, JJ., and ALDERMAN and MORPHONIOS, Circuit Judges, concur.
ENGLAND, J., concurs with an opinion.
ENGLAND, Justice (concurring).
I agree that appellant is entitled to a new trial in which the key element of proof must be the extent of appellant's acts in disruption of the Perrine substation.
Under any reading of the evidence in this case as it was first tried, two controlling facts stand out. First, the sole activity which preceded physical contact between the police and appellant was appellant's use of words. Second, whatever degree of physical contact took place (and the evidence is in dispute on the extent of contact), the initial contact was made by a police officer. Under these circumstances, appellant has been charged and convicted for the use of words. Offensive as these words may have been, it is my understanding that they are constitutionally protected. Lewis v. New Orleans, 415 U.S. 130, 134, 94 S.Ct. 970, 973, 39 L.Ed.2d 214 (1974) (a municipal ordinance which "punishes only spoken words ... can therefore withstand appellant's attack upon its facial constitutionality only if ... it is not susceptible of application to speech, although vulgar or offensive, that is protected by the First and Fourteenth Amendments."); Plummer v. Columbus, 414 U.S. 2, 94 S.Ct. 17, 38 L.Ed.2d 3 (1973) (an ordinance which "punishes only spoken words... is facially unconstitutional"); Hess v. Indiana, 414 U.S. 105, 94 S.Ct. 326, 38 L.Ed.2d 303 (1973) (reversing conviction under disorderly conduct statute for uttering an obscenity during street demonstration); Gooding v. Wilson, 405 U.S. 518, 521-22, 92 S.Ct. 1103, 1105, 31 L.Ed.2d 408 (1972) (reversing conviction for obscene and threatening words because "the constitutional guarantees of freedom of speech forbid the States to punish the use of words or language not within `narrowly limited classes of speech.'"); Cohen v. California, 403 U.S. 15, 22, 91 S.Ct. 1780, 1786, 29 L.Ed.2d 284 (1971) ("if Cohen's [obscene] `speech' was otherwise entitled to constitutional protection, we do not think the fact that some unwilling `listeners' in a public building may have been briefly exposed to it can serve to justify this breach of peace conviction"). See also Wiegand v. Seaver, 504 F.2d 303, 307 (5th Cir.1974), finding the statute at issue here unconstitutional because it "broadly encompasses both protected and unprotected speech."
By remanding for a new trial in which the jury is instructed to disregard the offensive character of the words uttered, and to convict appellant only if the manner and circumstances of his behavior in fact disrupted the operation of the Perrine substation, the Court has set a standard for application of the statute which is not only constitutionally permissible but is also consistent with prior Florida precedents. See Gonzales v. City of Belle Glade, 287 So.2d 669 (Fla. 1973), and In re Fuller, 255 So.2d 1 (Fla. 1971).
NOTES
[1] "Whoever commits such acts as are of a nature to corrupt the public morals, or outrage the sense of public decency, or affect the peace and quiet of persons who may witness them, or engages in brawling or fighting, or engages in such conduct as to constitute a breach of the peace or disorderly conduct, shall be guilty of a misdemeanor of the second degree, punishable as provided in Section 775.082 or Section 775.083."
[2] "All persons guilty of a riot, or of inciting or encouraging a riot, shall be guilty of a felony of the third degree, punishable as provided in Section 775.082, Section 775.083, or Section 775.084." Fla. Stat. § 870.01(2).
[3] "Whoever shall act in a loud, boisterous or disorderly manner so as to disturb the peace and quiet of any neighborhood or family, by loud or unusual noise, or by tumultuous or offensive behavior, threatening, traducing, quarreling, challenging to fight or fighting, shall be deemed guilty of disorderly conduct, and upon conviction, shall be fined in any sum not exceeding five hundred dollars ($500) to which may be added imprisonment for not to exceed one hundred eights (180) days." Ind. Code § 35-27-2-1, Inds.Stat.Ann. § 10-1510.
[4] "No person shall address any offensive, derisive or annoying word to any other person who is lawfully in any street or other public place, nor call him by any offensive or derisive name... ." N.H.P.L. 1926, chapter 378, § 2.
[5] "Any person who shall, without provocation, use to or of another, and in his presence ... opprobrious words or abusive language, tending to cause a breach of the peace ... shall be guilty of a misdemeanor." Ga. Code Ann. § 26-6303.
[6] "It shall be unlawful for any person or any number of persons to so stand, loiter or walk upon any street or sidewalk in the city as to obstruct free passage over, on or along said street or sidewalk. It shall also be unlawful for any person to stand or loiter upon any street or sidewalk of the city after having been requested by any police officer to move on."