355 So.2d 1176 (1977)
S.H.B., a Child, Appellant,
v.
STATE of Florida, Appellee.
No. 50612.
Supreme Court of Florida.
November 30, 1977.
Rehearing Denied April 5, 1978.
*1177 Richard W. Ervin, III, Public Defender, Tallahassee, for appellant.
Robert L. Shevin, Atty. Gen. and Charles W. Musgrove, Asst. Atty. Gen., Tallahassee, for appellee.
BOYD, Judge.
After a hearing before juvenile court, the state's petition to have appellant adjudicated delinquent for violation of Section 871.01, Florida Statutes, was sustained. Adjudication was withheld and appellant was placed on probation.
Section 871.01, Florida Statutes, states: "Whoever wilfully interrupts or disturbs any school or any assembly of people met for the worship of God or for any lawful purpose shall be guilty of a misdemeanor of the second degree... ." In denying appellant's motion for a new trial the Circuit Court initially and directly ruled on the constitutionality of Section 871.01, holding it to be constitutional on its *1178 face and as applied to appellant in the instant case. We have jurisdiction.[1]
The arguments presented by appellant are that the statute is constitutionally void for overbreadth and that it may not be constitutionally applied to him under the facts of this case because his activity was protected by the First Amendment to the U.S. Constitution. He cites cases arising under Section 877.03, Florida Statutes, in support of his argument. Section 877.03 is the "breach of the peace" statute, which was held constitutional in White v. State, 330 So.2d 3 (Fla. 1976). Appellant urges that the statute under which he was convicted and the "breach of the peace" statute are analogous and that his behavior should be judged under the standards of the latter as construed in White. However, Section 877.03, by its obvious breadth and its susceptibility to abuse by authorities, is subject to certain restraints in application which do not apply to Section 871.01. Thus, the cases defining the constitutional limits of Section 877.03 are not entirely apposite in this case.
Section 871.01 is a more explicit statute dealing with a particular kind of disturbance, i.e., the disturbance of a lawful assembly. It is not a rephrasing of Section 877.03, but is supplementary to it. It recognizes and provides penalties for the deliberate disruption of a peaceful and lawful assembly. The statute enumerates school gatherings and religious worship as the kinds of assemblies which it seeks to protect. These functions are fragile by their nature. They generally require a high degree of voluntary restraint and cooperation to produce the harmony necessary for their effectiveness. Thus, they are highly vulnerable to disturbance. A single individual may cause havoc in a situation in which hundreds of others have sought a common purpose.
For this reason, certain acts are proscribed in this setting which might be tolerable in the general public realm. Because of the innumerable situations and types of conduct involved, the question of what conduct is forbidden must be determined largely on a case-by-case basis. Generally, it is at the trial level that this decision will be made. However, the Constitution requires that certain guidelines be followed so that unnecessary infringement of individual liberties does not occur. It must be recognized that all civil freedoms have limits, though these limits should be drawn as broadly as possible and only placed with the greatest justification.
To commit an offense under Section 871.01 a person must have deliberately acted to create a disturbance. That is, he must act with the intention that his behavior impede the successful functioning of the assembly in which he has intervened, or with reckless disregard of the effect of his behavior. The acts complained of must be such that a reasonable person would expect them to be disruptive. Finally, the acts must, in fact, significantly disturb the assembly. These elements are inherent in the statute as drafted.
Since it is impossible to predict the type of behavior a person might use to cause a disruption, the statute cannot be more specific. But the elements of the offense, as outlined above, prevent an innocent party genuinely exercising his civil rights from being penalized.
In the case sub judice, innocence of purpose is not a factor. The appellant ran through the halls of Ribault Junior High School while classes were in session, in a group which was talking loudly, at a time when appellant was supposed to be in class. It was testified that students crowded the doors of the classrooms to view the occurrence. Appellant ignored requests that he return to class and continued his escapades in the hallways. When finally confronted by a teacher near the cafeteria, after having been asked by the principal to leave the school grounds, the defendant loudly uttered obscenities at the teacher, causing a crowd to gather. These facts establish that appellant committed acts which a reasonable person would expect to cause a disturbance, *1179 and that he acted with intent or with reckless disregard of the consequences of his behavior. The evidence shows that a disruption of the school's functions did, in fact, occur.
As the appellant notes, mere words, when used as a tool of communication, are constitutionally protected. But the protection fails when, by the manner of their use, the words invade the right of others to pursue their lawful activities. As we said in White: "It is the degree of loudness, and the circumstances in which they are uttered, which takes them out of the constitutionally protected area."[2] We note that appellant's conduct consisted of more than words  e.g., running through the halls of a school in session, disobeying the lawful and reasonable requests of school officials, and repeated loud utterances. The totality of these acts, in the context in which they were performed, constitutes a willful disturbance of a school by appellant, in violation of Section 871.01, Florida Statutes.
It should be noted that purported offenses under Section 871.01 are to be judged by the circumstances in which they occur. It takes more to disturb a parade than a church service. However, in a public school, appellant's conduct coupled with strident profanity in defiance of school authorities, causing an interruption in the school's activities, is forbidden under the statute.
The judgment of the Circuit Court is affirmed.
It is so ordered.
OVERTON, C.J., ADKINS and KARL, JJ., concur.
ENGLAND, J., dissents with an opinion.
HATCHETT, J., dissents with an opinion, with which ENGLAND and SUNDBERG, JJ., concur.
SUNDBERG, J., dissents.
ENGLAND, Judge, dissenting.
I dissent both from the majority's evaluation of the validity of this statute and its reading of the record in this case.
As to the statute, Section 871.01, Florida Statutes (1975), makes a criminal of anyone who "willfully interrupts or disturbs any school... ." A majority of my colleagues find this language sufficiently clear so that a man (here child) of common intelligence can know what is permissible conduct and what is not. I do not find that degree of clarity in the law. If elected public officials are not presumed to possess sufficient intelligence to understand that a violation of express statutory duties constitutes "malpractice in office",[1] then I fail to understand how school children can be held criminally responsible for errors in their judgment as to what constitutes or does not constitute an interruption or disturbance in a school.
The two key words in the statute are "willfully" and "disturbs". The majority attempts to provide a concrete standard of criminality which incorporates these terms by stating that a child is guilty of a criminal act if he or she does something which "significantly disturb[s]" a school and does so in "reckless disregard" of what the effect of the act might be. The majority offers no objective standard by which the term "disturb" may be measured, but leaves it to the idiosyncrasies of the persons claiming to have been "disturbed".[2] Under the majority's standard it is doubtful that any normal school child in this state is innocent of this crime. The clearest demonstration that this statute is overbroad and vague appears in the majority opinion itself, which states that
"the question of what conduct is forbidden must be determined largely on a case-by-case basis.
* * * * * *

*1180 Since it is impossible to predict the type of behavior a person might use to cause a disruption, the statute cannot be more specific."
As to the record before us, my reading of the transcript suggests that the school officials at Ribault Junior High School, not S.H.B., caused the disruption which allegedly occurred.[3] The assistant principal testified:
"A When this group of boys saw me coming  they was running through the hall and I yelled to them to stop. They kept moving and the teachers were coming to the door. The other students was looking.
Q So the activity that you're describing was their being in the hall  moving through the hall?
A Yes.
Q Was the defendant himself saying anything?
A I wasn't close enough to see.
Q How far away from him were you, sir?
A How far? I guess 15 feet  20 feet.
Q 15 feet, and you didn't hear the defendant say a word?
A Let me see if I understand you, sir. When I came through the hall  it's my job to clear the hall after the tardy bell.
Q I understand that.
A There was disturbance in the hall. There was noise whether it was [S.H.B.] or not  it was noise and I was sent to clear the hall.
Q Then it is your testimony that you don't know if [S.H.B.] said anything or not when he was in the hall?
A The group was talking.
* * * * * *
Q One further question. You stated on direct examination that the teachers and students came to the doors when you yelled for the defendant and the other members of the group to stop. Could the fact that they came to the doors or windows be related to your yelling down the hall as opposed to the defendant being in the hall?
A No. No.
Q But you did yell down the hall?
A When I got there, yes.
Q Did the defendant yell back down the hall toward you?
A No."
There may well be disciplinary problems in the public schools today. I am not persuaded, however, that the validation of a vague dragnet statute or the confirmation of an unsupported conviction are appropriate ways to solve them.
HATCHETT, Judge, dissenting.
The statute under challenge in this case, even as narrowly construed by the majority, still suffers from the constitutional infirmity of overbreadth since it is susceptible of application to protected speech. Unless this statute is further narrowed in a manner consistent with the opinion of this Court in State v. Saunders, 339 So.2d 641 (Fla. 1976), and with the decisions of the federal courts on this subject,[1] this statute will remain invalid on its face. Although an allegedly vague statute may be reviewed on a case by case basis,[2] as to whether it gives adequate *1181 notice to any citizen whom the authorities prosecute under the statute, an overly broad statute must be authoritatively construed so that it does not operate as a deterrent to the exercise of citizen's rights of free expression. Nobody can be punished under a statute purporting to outlaw spoken words, if the statute would be unconstitutional as applied to anybody.[3] The present statute should be narrowed so as to apply only to those disturbances caused by a narrow class of unprotected speech or conduct as defined in Saunders.[4]
An unconstitutional criminal statute should not be upheld merely because it is being applied to high school students rather than adults. Clearly, school authorities should have broad discretionary authority in the daily operation of the public schools. This includes wide latitude with respect to maintaining discipline and order. School authorities presently possess broad discretion in formulating and implementing school disciplinary regulations. Such regulations do not require the same degree of specificity necessary in our criminal statutes.[5] In Alex v. Allen, 409 F. Supp. 379 (W.D.Pa. 1976), the Court upheld a school regulation being challenged on the grounds of vagueness and overbreadth. The Court stated that such disciplinary rules need to be considered under a looser standard than the test applied to criminal statutes. In addition, the Court stated that the looser standard of constitutional review of high school regulations is appropriate because of the greater authority possessed by the state to regulate the conduct of children as opposed to that of adults. In implementing these looser regulations, school authorities possess a wide range of remedies, from suspensions and expulsions to corporal punishment.[6] The application of these disciplinary measures need only to comply with minimum due process requirements.[7] However, when the state wishes to impose the full force of our criminal laws, juveniles should be afforded the same due process rights given to adults.
ENGLAND and SUNDBERG, JJ., concur.
NOTES
[1] Art. V, § 3(b)(1), Fla. Const. and In re Fuller, 255 So.2d 1 (Fla. 1971).
[2] White v. State, 330 So.2d 3, 7 (Fla. 1976).
[1] State v. Wershow, 343 So.2d 605 (Fla. 1977).
[2] Cf., D'Alemberte v. Anderson, 349 So.2d 164 (Fla. 1977), where the Court held invalid a statute prohibiting conduct evaluated from the viewpoint of hypothetically reasonable men rather than the person charged with the crime.
[3] The record suggests that the trial judge was more concerned with the general problem of school discipline rather than the question of whether a violation of law occurred in this case. After S.H.B.'s counsel had made his closing argument, the court made these observations:

"THE COURT: [Counsel], you have made a very good presentation. What I'm going to say has no bearing on your presentation. It was well given, but if every child was allowed to do as he pleased in the halls as this young man did, we would have no school system, period. * * * If every student was allowed to roam the halls at will cursing the personnel, there would be absolutely no harmony. No nothing. The school system has a hard enough time at the moment and things like this just simply can't go on."
[1] Gooding v. Wilson, 405 U.S. 518, 92 S.Ct. 1103, 31 L.Ed.2d 408 (1972); Chaplinsky v. New Hampshire, 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031 (1942); Wiegand v. Seaver, 504 F.2d 303 (5th Cir.1974).
[2] State v. Saunders, supra, 339 So.2d at 644.
[3] Bigelow v. Virginia, 421 U.S. 809, 95 S.Ct. 2222, 44 L.Ed.2d 600 (1975); Coates v. City of Cincinnati, 402 U.S. 611, 91 S.Ct. 1686, 29 L.Ed.2d 214; Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22.
[4] State v. Saunders, supra, 339 So.2d at 644.
[5] See Black Coalition v. Portland School District No. 1, 484 F.2d 1040 (9th Cir.1973); Fenton v. Stear, 423 F. Supp. 767 (W.D.Pa. 1976); Graham v. Board of Education, Idabel School District No. 5, 419 F. Supp. 1214 (E.D.Okla. 1976).
[6] The defendant might have been properly prosecuted for trespass, pursuant to Sec. 810.08 or Sec. 810.09, Fla. Stat. (1975), by his remaining on school grounds after being told to leave by the school authorities.
[7] Goss v. Lopez, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed. 725 (1975).