ERVIN, Judge,
dissenting and concurring.
I agree in all respects with the majority’s opinion except that portion upholding the delinquency adjudication as to the possession of alcoholic beverages. In my judgment the facts do not demonstrate that the *1100 intrusion, i. e., the stop of the car, was justified and, since the officer had no right to be where he was, cf. State v. Ashby, 245 So.2d 225, 227 (Fla.1971), he had no right, on the theory of plain view, to seize the rum bottle seen by him within the car.
A stop of an automobile on grounds less than probable cause is a seizure, and the Fourth Amendment applies to determine whether the intrusion is reasonable. Delaware v. Prouse, 440 U.S. 648, 99 S.Ct. 1391, 1396, 59 L.Ed.2d 660 (1979). Thus, when grounds other than probable cause are relied upon to justify the reasonableness of the particular law enforcement action, the act is judged by balancing the reasonableness of the intrusion on the individual’s Fourth Amendment privacy interests against the promotion of legitimate governmental interests. Id. Before the officer is authorized to stop, his observations should lead him reasonably to suspect that the occupants of the particular vehicle are violating the laws or that the vehicle is being operated in violation of the laws. United States v. Brignoni-Ponce, 422 U.S. 873, 881, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975); Delaware v. Prouse, supra. And, he must be “aware of specific articulable facts, together with rational inferences from those facts, that reasonably warrant suspicion” of such illegality. United States v. Brignoni-Ponce, supra, 422 U.S. at 884, 95 S.Ct. at 2582. Finally, when a court evaluates the reasonableness* of the conduct on grounds less than probable cause, the circumstances must be judged by an objective standard: “[WJould the facts available to the officer at the moment of .the seizure ‘warrant a man of reasonable caution in the belief that the action taken was appropriate?” Terry v. Ohio, 392 U.S. 1, 22, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968).
Applying the above test to the instant facts, would the utterance of the epithet by the delinquent have warranted a man of reasonable caution in the belief that it was necessary to stop the vehicle upon the ground that the words used were a violation of the disorderly conduct ordinance? I suggest that the present circumstances do not meet that test.
The majority’s opinion rightfully, I think, states that the municipal ordinance is unconstitutional as applied to the manner in which the words were used by D.C.E., yet on the other hand holds that “the officers had at least a reasonable suspicion that appellant had violated the municipal ordinance, . . . .” Ante at 1099. Were this a case of first impression I might be inclined to agree, but disorderly conduct ordinances and similar laws affecting speech have been narrowly limited by the courts of this state for the past several years. For example, in City of St. Petersburg v. Waller, 261 So.2d 151, 158-159 (Fla.1972), the Florida Supreme Court, relying upon Chaplinsky v. New Hampshire, 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031 (1942), stated that a defendant’s conduct may violate a city ordinance proscribing verbal abuse of a police officer when limited only to words having a direct tendency to cause acts of violence. However, “[m]ere displeasure, annoyance or resentment is not sufficient."” Id. at 158. More recently the court upheld Section 877.03, prohibiting conduct involving breaches of peace and disorderly conduct, by narrowing its provisions to circumstances where the verbal conduct tended to inflict injury or to incite an immediate breach of the peace. White v. State, 330 So.2d 3 (Fla.1976). And, before a conviction could be sustained, the state must show more than that the words used were offensive to a part of the general population. Id. at 7. Only last year the court struck down as facially unconstitutional Section 847.04, making illegal the use of profane, vulgar and indecent language, because of the absence of any provision in the statute limiting its application to fighting words directed to another as mandated by Chaplinsky v. New Hampshire, supra. Brown v. State, 358 So.2d 16 (Fla.1978).
The above decisions, as well as those cited in the majority opinion, relating to protected speech, were decided some period of time before.the alleged delinquent acts occurred; as a result, I do not think it behooves us to excuse the officer’s illegal conduct on “reasonable suspicion” grounds. One may reasonably conclude that the officer’s sensitivities were offended by the indelicate lan *1101 guage used by the delinquent. The coarse and crude words themselves might well offend a substantial portion of the general population. Still, such verbal injuries cannot serve as justification for seizure of the delinquent. The detaining officer must be charged with knowledge of the laws he seeks to enforce. He either knew or should have known that the delinquent’s conduct was protected. There may be circumstances, although I cannot now conceive of any, where the officer’s ignorance of the law may nevertheless permit his seizure of the defendant oh founded suspicion principles, and serve as a justification for the levying of other charges. I think, however, when we balance the reasonableness of the intrusion upon the individual’s First and Fourth Amendment interests against the promotion of governmental interests, the former must prevail over the latter and the intrusion declared unreasonable. If the officer had no reasonable belief that the law was violated, then clearly he could not seize articles seen by him in plain view if the officer saw them in a place where he had no legal right to be. Compare Delaware v. Prouse, supra; Coladonato v. State, 348 So.2d 326 (Fla.1977); Mullins v. State, 366 So.2d 1162 (Fla.1978). See also Keenan v. State, 372 So.2d 1012 (Fla. 1st DCA 1979).
I would reverse the adjudication of delinquency in its entirety.