429 So.2d 753 (1983)
In the Interest of C.J.R., a Child, Appellant,
v.
STATE of Florida, Appellee.
No. AM-215.
District Court of Appeal of Florida, First District.
March 31, 1983.
Rehearing Denied May 2, 1983.
Richard B. Davis, Jr., Jasper, for appellant.
Jim Smith, Atty. Gen., David P. Gauldin, Asst. Atty. Gen., for appellee.
MILLS, Judge.
C.J.R. appeals from an adjudication of delinquency, contending the trial court erred in finding him guilty of disorderly conduct and of carrying a concealed weapon. We affirm.
While police officers of the City of Jasper were investigating an accident involving C.J.R.'s car, C.J.R. began "cussing ... in an extremely loud voice." Officer Goff asked him to calm down or he would be forced to arrest him for disorderly conduct. C.J.R. refused to alter his conduct. He continued cursing, using words such as "fuck this shit." He called the officer a "mother fucker." He indicated that he had no intention of cooperating with the officer. While C.J.R. engaged in this conduct, the officer was unable to operate the breathalyzer machine and could not continue his work. C.J.R. was handcuffed to a chair and while in this position an officer noticed a bulge in his shirt. "Num-chucks" were removed and were the basis of the charge of carrying a concealed weapon.
"Fuck this shit ..., you mother fucker."
Fighting words?
Inflict injury?
Tend to incite an immediate breach of peace?
Yes!
Protected by the First Amendment?
Permissible free speech?
Condoned by White v. State, 330 So.2d 3 (Fla. 1976)?
No!
*754 There is no doubt in our minds that C.J.R.'s words were fighting words which by their utterance inflicted injury and tended to incite an immediate breach of the peace. In our judgment, C.J.R.'s unprovoked, obscene language is not constitutionally protected under the circumstances of this case. White v. State, supra.
We are convinced that our founding fathers did not mean for the First Amendment to protect the type of profanity C.J.R. directed at the officer who was carrying out his official duties. We refuse to place such a construction on "free speech." We refuse to make the First Amendment say that which it does not say and did not intend to say. No one should be subjected to such obscene, disrespectful language. Not only is the language used here socially unacceptable, but it is legally unacceptable.
The officer finally arrested C.J.R. because C.J.R.'s conduct hindered and interrupted his investigation of the incident in which C.J.R.'s car was involved. This was proper and necessary. The loudness and circumstances in which the obscene language was used remove the language from First Amendment protection. White v. State, supra. C.J.R. was guilty of disorderly conduct.
Although it might be contended that the language used by the minor defendant in D.C.E. v. State, 381 So.2d 1097 (Fla. 1st DCA 1979), is similar to that used by the minor defendant in this case, not so. The language used by C.J.R. is more obscene than that used by D.C.E. Compare D.C.E., "fucking pigs," with C.J.R., "fuck this shit ... you mother fucker." Also, the circumstances are totally different. In this case, the officer was precluded from carrying out his official duties. Not so in D.C.E. v. State, supra.
The writer of this opinion wrote the dissenting opinion in D.C.E. He has not changed his opinion since writing the dissent nor does he contemplate doing so within the foreseeable future.
The writer of this opinion is surprised that the dissenting opinion states that the majority opinion does not adhere to stare decisis. This statement is inaccurate. See White v. State, supra.
The writer joins with the dissent in expressing concern that the doctrine of stare decisis is being ignored often by the panels of this Court. This is unfair to litigants and their attorneys and must be remedied. We Judges are the only ones who can correct this unfortunate situation. Will we meet the challenge? Will we do the job?
The trial court concluded that C.J.R. violated Section 790.01(1), Florida Statutes (1981), by carrying concealed "num-chucks" which were deadly weapons. There was competent substantial evidence before the trial court to support its conclusion that the "num-chucks" concealed by C.J.R. in his shirt were "deadly weapons" as prohibited by Section 790.01(1). One of the investigating officers testified that "num-chucks" could be lethal if someone knew how to use them. The court also had before it evidence revealing that C.J.R. had practiced with them and apparently knew how to use them, because after he was in custody and handcuffed he threatened to beat the officers with them. C.J.R. was guilty of carrying a concealed weapon.
We affirm.
BOOTH, J., concurs.
ERVIN, J., concurs and dissents with opinion.
ERVIN, Judge, concurring and dissenting.
I agree with the majority's affirmance of the delinquency adjudication for the offense of carrying a concealed weapon. I cannot agree with its affirmance of the adjudication for the offense of disorderly conduct. The epithets which the juvenile uttered, resulting in his arrest for disorderly conduct, occurred while police officers were investigating an automobile accident in which a friend of the juvenile was involved. The opprobrious statements, recited at page one of the majority's opinion, were made when the officers failed to respond to certain inquiries directed to them *755 by the juvenile. The verbal indiscretions were unaccompanied by any threat to the personal safety of the officers. After they were made, the juvenile turned away for the purpose of calling his mother, and at that point he was seized from behind, arrested and handcuffed.
I do not know whether it was the intention of our founding fathers for the First Amendment to protect the type of profanity C.J.R. directed at the officers, however such does appear to be the intention of the Florida Supreme Court, which has held that Section 877.03, Florida Statutes, prohibiting conduct involving breaches of the peace and disorderly conduct, is applicable only to circumstances in which the verbal conduct tends to inflict injury or to incite an immediate breach of the peace. White v. State, 330 So.2d 3, 7 (Fla. 1976). Do the words used by the juvenile in the present case fall outside the protections of the First Amendment as defined by White v. State? Based upon a fairly recent decision of our court, D.C.E. v. State, 381 So.2d 1097 (Fla. 1st DCA 1979), I think not. The facts recited in that opinion reveal that the juvenile leaned from the rear window of a car at a busy intersection and shouted "f... ... pigs" three times at police officers stopped in traffic at the same intersection. This conduct  as in the present case  gave rise to the juvenile's arrest for disorderly conduct. Relying upon White, we held that the words used could not be characterized as fighting words, which by their very utterance inflicted injury, or tended to incite an immediate breach of the peace. Id. at 1099. If the expletive deleted from the majority's opinion in D.C.E. was, to offer a few examples, "foolish", "fawning", "finicky", "flaccid", "foppish", "frantic", "fretful", "fascist", or a word of similar import, perhaps it would be possible to distinguish the holding in D.C.E. from that of the majority in the case now on review. We all know, however, that the word excised is none of the above and that it is generally considered by society as far more profane than any of the examples listed. That being the case, the facts present in both D.C.E. and C.J.R. are indistinguishable, although the holdings proceed in opposite directions.
I note also that the author of the majority's opinion in the present case dissented to the majority's reversal of D.C.E.'s delinquency adjudication for disorderly conduct, wherein he stated: "There is no doubt in my mind that defendant's words were fighting words which by their utterance inflicted injury and tended to incite an immediate breach of the peace." 381 So.2d at 1099. The dissent in D.C.E. now prevails before a different panel, but not the doctrine of stare decisis.