ERVIN, Judge,
concurring and dissenting.
I agree with the majority’s affirmance of the delinquency adjudication for the offense of carrying a concealed weapon. I cannot agree with its affirmance of the adjudication for the offense of disorderly conduct. The epithets which the juvenile uttered, resulting in his arrest for disorderly conduct, occurred while police officers were investigating an automobile accident in which a friend of the juvenile was involved. The opprobrious statements, recited at page one of the majority’s opinion, were made when the officers failed to respond to certain inquiries directed to them *755 by the juvenile. The verbal indiscretions were unaccompanied by any threat to the personal safety of the officers. After they were made, the juvenile turned away for the purpose of calling his mother, and at that point he was seized from behind, arrested and handcuffed.
I do not know whether it was the intention of our founding fathers for the First Amendment to protect the type of profanity C.J.R. directed at the officers, however, such does appear to be the intention of the Florida Supreme Court, which has held that Section 877.03, Florida Statutes, prohibiting conduct involving breaches of the peace and disorderly conduct, is applicable only to circumstances in which the verbal conduct tends to inflict injury or to incite an immediate breach of the peace. White v. State, 330 So.2d 3, 7 (Fla.1976). Do the words used by the juvenile in the present case fall outside the protections of the First Amendment as .defined by White v. State? Based upon a fairly recent decision of our court, D.C.E. v. State, 381 So.2d 1097 (Fla. 1st DCA 1979), I think not. The facts recited in that opinion reveal that the juvenile leaned from the rear window of a car at a busy intersection and shouted “f. pigs” three times at police officers stopped in traffic at the same intersection. This conduct — as in the present case — gave rise to the juvenile’s arrest for disorderly conduct. Relying upon White, we held that the words used could not be characterized as fighting words, which by their very utterance inflicted injury, or tended to incite an immediate breach of the peace. Id. at 1099. If the expletive deleted from the majority’s opinion in D.C.E. was, to offer a few examples, “foolish”, “fawning”, “finicky”, “flaccid”, “foppish”, “frantic”, “fretful”, “fascist”, or a word of similar import, perhaps it would be possible to distinguish the holding in D.C.E. from that of the majority in the case now on review. We all know, however, that the word excised is none of the above and that it is generally considered by society as far more profane than any of the examples listed. That being the case, the facts present in both D.C.E. and C.J.R. are indistinguishable, although the holdings proceed in opposite directions.
I note also that the author of the majority’s opinion in the present case dissented to the majority’s reversal of D.C.E.’s delinquency adjudication for disorderly conduct, wherein he stated: “There is no doubt in my mind that defendant’s words were fighting words which by their utterance inflicted injury and tended to incite an immediate breach of the peace.” 381 So.2d at 1099. The dissent in D.C.E. now prevails before a different panel, but not the doctrine of stare decisis.