Abelardo SOTO, Plaintiff,

v.

CITY OF MIAMI BEACH, Nicholas Guasto, and Douglas Simon, Defendants.

Case No. 13–20057–CIV.

United States District Court, S.D. Florida.

Signed June 13, 2014.

Filed June 16, 2014.

---

Roderick Darrell Vereen, Law Office of Roderick D. Vereen, Esq. P.A., Miami, FL, for Plaintiff.

Robert F. Rosenwald, Jr., City of Miami Beach, Robert L. Switkes, Candace Diane Cronan, Robert L. Switkes & Associates, P.A., Kyle Brandon Teal Miami Beach, FL, for Defendants.

## ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

JAMES LAWRENCE KING, District Judge.

**THIS MATTER** comes before the Court upon Defendant NICHOLAS GUASTO's and DOUGLAS SIMON's Motion for Summary Judgment (DE 48) and Defendant CITY OF MIAMI BEACH's Motion for Summary Judgment (DE 52), both filed on March 24, 2014. The Court heard oral argument on both motions on May 22, 2014, and is otherwise fully briefed as to both motions.[1]

## I. INTRODUCTION

Abelardo Soto brings this action for false arrest and battery against Lieutenant Douglas Simon, Officer Nicholas Guasto, and their employer, the City of Miami Beach (the "City"). The First Amended Complaint (the "Complaint") alleges that Soto was in a crowd of bystanders observing Lieutenant Simon making an arrest on Miami Beach when Lieutenant Simon, upon completing the arrest, singled Soto out from the crowd and arrested him without probable cause. The Complaint alleges that Officer Nicholas Guasto prepared an arrest affidavit for Soto which contained false and misleading statements designed with the intent to support the false arrest of Soto for the offenses of aggravated battery on a law enforcement officer, resisting an officer with violence, and affray.[2] Finally, the Complaint alleges that

---

1. In addition to Defendant Nicholas Guasto's and Douglas Simon's Motion for Summary Judgment, the Court has also considered Plaintiff's Response in Opposition to Defendants' Motion for Summary Judgment (DE 55), filed on April 10, 2014, and Defendants' Reply in Support of their Motion for Summary Judgment (DE 57), filed on April 21, 2014. With respect to Defendant City of Miami Beach's Motion for Summary Judgment, the Court has also considered Plaintiff's Response in Opposition (DE 56), filed on April 14, 2014, and Defendants' Reply in Support (DE 58), filed on April 23, 2014.

2. Soto was acquitted of all charges following a bench trial in the County Court of the Elev-

the City failed to take steps to prevent false arrests despite the existence of a pattern or practice of excessive use of force and/or false arrests sufficient to put the City on notice of a need to correct such practices.

Based on these facts, Soto brought the instant action for false arrest under 42 U.S.C. § 1983 against Officer Nicholas Guasto (Count I); Lieutenant Douglas Simon (Count II); and the City of Miami Beach (Count III). Soto additionally asserts claims for battery against Lieutenant Simon (Count IV) and the City (Count V). Lieutenant Simon and Officer Guasto have moved for summary judgment based on their asserted qualified immunity from prosecution, and the City has moved for summary judgment based on Soto's failure to produce any evidence of a widespread pattern of excessive force and false arrests sufficient to put the City on notice of a need to curb such behavior.

## II. LEGAL STANDARD ON MOTION FOR SUMMARY JUDGMENT

Summary judgment is appropriate where the pleadings and supporting materials establish that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See Fed.R.Civ.P. 56; *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the record as a whole could not lead a rational fact-finder to find for the nonmoving party, there is no genuine issue of fact for trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

The moving party bears the burden of pointing to the part of the record that shows the absence of a genuine issue of material fact. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Allen v. Tyson Foods, Inc.,* 121 F.3d 642, 646 (11th Cir.1997). Once the moving party establishes the absence of a genuine issue of material fact, the burden shifts to the nonmoving party to go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548; *see also Chanel, Inc. v. Italian Activewear of Fla., Inc.,* 931 F.2d 1472, 1477 (11th Cir.1991) (holding that the nonmoving party must "come forward with significant, probative evidence demonstrating the existence of a triable issue of fact.").

On a motion for summary judgment, the court must view the evidence and resolve all inferences in the light most favorable to the nonmoving party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). However, a mere scintilla of evidence in support of the nonmoving party's position is insufficient to defeat a motion for summary judgment. *See id.* at 252, 106 S.Ct. 2505. If the evidence offered by the nonmoving party is merely colorable or is not significantly probative, summary judgment is proper. *See id.* at 249–50, 106 S.Ct. 2505.

## III. FACTS

This case is one of a growing number of recent cases wherein most of the incident at issue was captured on video.[3] As there can be no *genuine* dispute related to facts captured on video, the Court construes all

---

enth Judicial Circuit in and for Miami–Dade County.

**3.** Indeed, following the hearing on Defendants' motions for summary judgment, and upon agreement of all parties that the DVD

accurately represented the incident at issue, Plaintiff submitted a DVD containing eight videos of the incident for the Court's review. *See* Court's Exhibit 1.

such facts in the light they are depicted irrespective of Plaintiff's deposition testimony to the contrary, if any.[4] However, the Court accepts all facts which are genuinely disputed in the light most favorable to Plaintiff.

The incontrovertible video evidence, Plaintiff's deposition testimony, and Lieutenant Simon's deposition testimony establish the following:

On March 26, 2011, Plaintiff was taking a casual stroll northbound on Miami Beach when he observed Lieutenant Simon, standing approximately five feet from the shoreline, attempting to effectuate the arrest of a young woman. Soto Deposition at 70–72; Court's Exhibit 1. A security guard in a blue shirt was assisting the officer by trying to keep the woman's companion, a young black man, at bay a few feet away. Soto Deposition at 73; Court's Exhibit 1. When the young man attempted to make his way past the security guard to where Lieutenant Simon detained the woman at the front of his ATV, the security guard grabbed the man from behind and dragged him to the ground. Court's Exhibit 1. The young woman was clinging to Lieutenant Simon's ATV and resisting Lieutenant Simon's attempts to handcuff her. *Id.* Lieutenant Simon finally pulled the woman free of the ATV and flung her to the ground at his feet. *Id.* A large, screaming crowd immediately began to gather around the scene, with Lieutenant Simon, the security guard, the woman, and the young man at the center. *Id.* Lieutenant Simon stood with his back towards the ocean and the crowd formed a semi-circle around and in front of him. *Id.* People in the crowd can be heard screaming obscenities at Lieutenant Simon, including, but not limited to: "That's fucked up," "You don't hit a girl like that," and "That's some pussy ass shit." *Id.*

Plaintiff was "one of the first" people to join the crowd around Lieutenant Simon. Soto Deposition at 111. Plaintiff stood at the leading edge of the crowd, about ten feet from Lieutenant Simon, facing the incident from the South. *Id.* at 117; Court's Exhibit 1. Plaintiff testified that, after Lieutenant Simon flung the woman the ground, Plaintiff heard someone behind him or near him in the crowd screaming "pop that nigger" or "stick that nigger." Soto Deposition at 128–31. Plaintiff further testified that he thought the person screaming was referring to the young man the security guard was restraining, and that the words meant "hit that black guy." *Id.* Lieutenant Simon testified that he thought Plaintiff was the person screaming "stick that nigger," that he assumed Plaintiff was talking about him, and that, based on his experience working in gang units, "stick" is a "slang term for either stab or punch." Simon Deposition at 21.

As the yelling and screaming crowd formed, the security guard continued to struggle with the man he was attempting to restrain. Court's Exhibit 1. The security guard eventually put the man into a choke-hold from behind. *Id.* Thinking that the man was being "choked to death," Plaintiff broke from the perimeter of the crowd, moved to within a few feet of Lieutenant Simon (and the security guard, and the man being choked, at his feet) and told Lieutenant Simon, "This guy is being choked." Soto Deposition at 121, 131. Lieutenant Simon ordered Plaintiff to "stand back," and Plaintiff complied by taking one or two steps back just as a Miami Beach lifeguard interposed himself between Plaintiff and the officer and pushed Plaintiff back. *Id.* at 127; Court's Exhibit 1.

---

4. *See Scott v. Harris,* 550 U.S. 372, 378–79, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007).

Roughly two minutes later, Lieutenant Simon's backup arrived. Court's Exhibit 1. After one of the newly arrived officers took control of the woman Lieutenant Simon had been detaining, Lieutenant Simon went straight through the crowd to Plaintiff, dragged him from the crowd, and placed him under arrest. *Id.* Lieutenant Simon was assisted by three other officers in handcuffing Plaintiff, during which Lieutenant Simon suffered a laceration to his forehead.[5] *Id.*; Soto Deposition at 145; Simon Deposition at 14.

While Lieutenant Simon was being treated for his forehead laceration, Officer Guasto filled out an arrest report for the incident. Officer Guasto included details in the report which he heard from various officers who had responded to Lieutenant Simon's call for backup. Some of the statements in Officer Guasto's report are factually inaccurate, including: "While Lieutenant Simon was attempting to take [the young woman] into custody, [Plaintiff] went to the front of the crowd and began screaming and yelling at other people in the area in an attempt to convince them to become hostile towards Lieutenant Simon and to attack him," "The defendant repeatedly picked up sand and threw it at Lieutenant Simon and encouraged others to do the same," and "Lieutenant Simon approached [Plaintiff] who struck Lieutenant Simon with an unknown weapon on his forehead, causing a deep laceration." Simon Deposition at 13–15.

## IV. DISCUSSION

Defendant Simon's and Defendant Guasto's motion asserts that they are entitled to summary judgment on Plaintiff's 42 U.S.C. § 1983 claims for false arrest based on qualified immunity because Defendants had at least arguable probable cause to arrest Plaintiff, and the City's motion asserts that it is entitled to summary judgment on Plaintiff's § 1983 claim for false arrest because Plaintiff has wholly failed to carry his burden of introducing evidence which establishes a pattern or practice of false arrests or excessive use of force sufficient to put the City on notice of a need to correct such practices. Defendants' respective motions also assert that, should the Court determine Defendant Simon and Defendant Guasto had arguable probable cause to arrest Plaintiff, Defendant Simon and the City are entitled to summary judgment on Plaintiff's state law claims for battery because the Complaint does not allege a use of force greater than that which is necessary incident to a lawful arrest. For the reasons cited herein, the Court finds that Defendants' motions for summary judgment must be granted.

### A. Defendant Simon and Defendant Guasto Are Entitled to Qualified Immunity from Plaintiff's 42 U.S.C. § 1983 Claims for False Arrest Because Defendants Had Arguable Probable Cause to Arrest Plaintiff

Government officials are entitled to qualified immunity from civil liability in their individual capacities when performing discretionary functions of their office "insofar as their conduct does not violate clearly established statutory or constitutional rights...." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The doctrine of qualified immunity "balances two important interests—the need to hold public officials

---

5. While it was unclear at the time how Lieutenant Simon suffered the laceration, upon reviewing videos of the incident several days later Lieutenant Simon determined that he struck his forehead against another officer's holstered weapon while attempting to handcuff Plaintiff.

accountable when they exercise power irresponsibly and the need to shield officials from ... liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009). Thus, qualified immunity protects "all but the plainly incompetent or one who is knowingly violating federal law." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir.2002). And, the existence of "arguable probable cause" to arrest constitutes an absolute bar to a 42 U.S.C. § 1983 claim for false arrest. *Skop v. City of Atlanta*, 485 F.3d 1130, 1137–38 (11th Cir.2007). Indeed, as the Eleventh Circuit recently stated when addressing the applicability of qualified immunity in the false arrest context:

> While an officer who arrests an individual without probable cause violates the Fourth Amendment, this does not inevitably remove the shield of qualified immunity. We do not automatically hold an officer liable for making an arrest that, when seen with the benefit of hindsight, turns out not to have been supported by probable cause. As the Supreme Court observed in *Anderson v. Creighton*, 483 U.S. 635, 641, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987), "it is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and we have indicated that in such cases those officials ... should not be held personally liable." Thus, even if we determine that the officer did not in fact have probable cause, we apply the standard of "arguable probable cause," that is, whether "reasonable officers in the same circumstances and possessing the same knowledge as the Defendant[ ] could have believed that probable cause existed to arrest." *Lee v. Ferraro*, 284 F.3d 1188, 1195 (11th Cir.2002) (emphasis added, quotation marks omitted). Indeed, this is "all that is required for

qualified immunity to be applicable to an arresting officer." *Scarbrough v. Myles*, 245 F.3d 1299, 1302 (11th Cir.2001) (per curiam). This standard recognizes that law enforcement officers may make reasonable but mistaken judgment regarding probable cause but does not shield officers who unreasonably conclude that probable cause exists.

*Skop*, 485 F.3d at 1137–38. Thus, law enforcement officers who reasonably, but mistakenly, conclude that probable cause is present are entitled to qualified immunity. *Hunter v. Bryant*, 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991). And, so long as arguable probable cause existed to arrest for *any* offense, the arrest and detention are valid even if arguable probable cause was lacking as to some offenses, or even as to all announced charges. *Lee*, 284 F.3d at 1196.

■ The existence of actual or arguable probable cause is a fact-specific inquiry which is dependent on the elements of the purported crime. *Crosby v. Monroe Cnty.*, 394 F.3d 1328, 1332 (11th Cir.2004). Defendant Simon stated during his deposition that he believed he had probable cause to arrest Plaintiff for disorderly conduct in violation of § 877.03, Florida Statutes (2011), and the Court agrees.

The Florida disorderly conduct statute provides:

> Whoever commits such acts as are of a nature to corrupt the public morals, or outrage the sense of public decency, or affect the peace and quiet of persons who may witness them, or engages in brawling or fighting, or engages in such conduct as to constitute a breach of the peace or disorderly conduct, shall be guilty of a misdemeanor of the second degree....

§ 877.03, Fla. Stat. (2011).[6] With respect to verbal conduct, the Supreme Court of Florida has held that the disorderly conduct statute proscribes only " 'fighting words' or words like shouts of 'fire' in a crowded theatre." *State v. Saunders,* 339 So.2d 641 (Fla.1976) (quoting *White v. State,* 330 So.2d 3, 7 (Fla.1976)).

It is undisputed that someone in the crowd near Plaintiff was shouting words which both Plaintiff and Defendant Simon interpreted as a call to violence against a person, albeit different people. *See* Soto Deposition at 128–31; *see also* Simon Deposition at 28. Thus, it is undisputed that "fighting words" were being shouted in a public place. The Court accepts as true, as it must, that Plaintiff was not the person shouting for violence. However, at the time he made the arrest, Defendant Simon was under the mistaken belief that it was Plaintiff who was shouting. Simon Deposition at 18–19. Moreover, Plaintiff testified that the person he heard shouting for violence was standing near him, or right behind him. Soto Deposition at 128–29.

Based on the video evidence in this case, it is clear that Defendant Simon found himself in the middle of a chaotic situation and surrounded by an emotional and unruly crowd. *See generally* Court's Exhibit 1. Given the chaos with which Defendant Simon was encircled, and the close proximity between Plaintiff and the person who was actually shouting for violence, the Court finds that Defendant Simon's belief that Plaintiff was shouting for violence in violation of the disorderly conduct statute was reasonable, even though it was mistaken. *See Hunter,* 502 U.S. at 228, 112 S.Ct. 534 (finding secret service agents were entitled to qualified immunity because their decision to arrest was reasonable, even if mistaken). Accordingly, Defendant Simon and Defendant Guasto had arguable probable cause to arrest Plaintiff, Defendant Simon and Defendant Guasto are entitled to qualified immunity, and Plaintiff's claims against them for false arrest under 42 U.S.C. § 1983 in Counts I and II must fail.

**B. The Lack of a Constitutional Injury Precludes Plaintiff's 42 U.S.C. § 1983 Claim for False Arrest Against the City**

The City argues that is entitled to summary judgment on Count III because Plaintiff has failed to introduce evidence which demonstrate a pattern or practice of false arrests or excessive use of force sufficient to put the City on notice of a need to correct widespread constitutional deprivations. As the Court has concluded that Defendant Simon and Defendant Guasto had at least probable cause to arrest Plaintiff, the Court need not reach the City's argument because Plaintiff is unable to maintain his 42 U.S.C. § 1983 action against the City without an underlying constitutional deprivation in any event. *See City of Los Angeles v. Heller,* 475 U.S. 796, 799, 106 S.Ct. 1571, 89 L.Ed.2d 806 (1986) (finding municipality could not be liable under § 1983 where plaintiff failed to establish underlying constitutional injury). Accordingly, the City's motion for summary judgment must also be granted as to Plaintiff's 42 U.S.C. § 1983 false arrest claim brought in Count III.

**C. The State Law Claims for Battery**

■ The Complaint alleges that, "[c]aptured on video was Lt. Simon snatching Plaintiff out of the crowd and throwing him to the ground, dropping on his back with his knee ... placing him in handcuffs

---

**6.** A second degree misdemeanor is a criminal violation punishable by a definite term of imprisonment not exceeding sixty days. § 775.082, Fla. Stat. (2013).

and then other officers standing him up and performing a wrist lock on him while escorting him to the police vehicle and taking him into custody." DE 4, ¶ 21. Defendant Simon and the City argue that they are entitled to summary judgment on Plaintiff's state law claims for battery (Counts IV and V) because the force allegedly used by Defendant Simon to effectuate the lawful arrest of Plaintiff cannot constitute battery as a matter of law.

■ Under Florida law, a police officer is entitled to use force reasonably necessary to effectuate an arrest and police contact incident to an arrest cannot form the basis of a claim for battery. *See Lester v. City of Tavares*, 603 So.2d 18 (Fla.5th DCA 1992); *see also City of Miami v. Albro*, 120 So.2d 23 (Fla.3d DCA 1960). As the Court has already determined that Defendant Simon and Defendant Guasto had arguable probable cause to arrest Plaintiff, and because the force allegedly used in this case is no more than that which is necessary to effectuate an arrest, Defendant Simon's conduct does not constitute battery as a matter of law. Accordingly, Defendant Simon and the City are entitled to summary judgment on Plaintiff's state law claims for battery brought in Counts IV and V.

## V. CONCLUSION

Accordingly, after careful consideration and the Court being otherwise fully advised, it is ORDERED, ADJUDGED, and DECREED that:

1. Defendant Simon's and Defendant Guasto's Motion for Summary Judgment (DE 48) be, and the same is, hereby GRANTED.

2. Defendant City of Miami's Motion for Summary Judgment (DE 52) be, and the same is, hereby GRANTED.

3. The Trial of this matter, currently set for June 23, 2014, be, and the same is, hereby CANCELLED.

4. All pending motions are DENIED AS MOOT.