934 So.2d 656 (2006)
Henry Brian BARRY, Appellant,
v.
STATE of Florida, Appellee.
No. 2D05-2667.
District Court of Appeal of Florida, Second District.
August 4, 2006.
Gary Kollin of Gary Kollin, P.A., Fort Lauderdale, for Appellant.
*657 Charles J. Crist, Jr., Attorney General, Tallahassee, and Danilo Cruz-Carino, Assistant Attorney General, Tampa, for Appellee.
STRINGER, Judge.
Henry Brian Barry challenges his convictions and sentences for aggravated assault on a law enforcement officer with a deadly weapon and disorderly conduct, contending that the evidence was insufficient to support either conviction. We affirm the aggravated assault conviction without further comment. However, because we agree that the evidence was insufficient to support the disorderly conduct conviction, we reverse as to that charge.
The charges against Barry arise from an incident that occurred between him and Lake Placid Police Officer Bonnie Pruitt. After dropping their daughter off at school, Barry and his wife were walking back to their car, which was parked in front of the elementary school. While returning to their car, Barry and his wife exchanged words with three young girls who were walking toward the school. While the content of these words was never definitively established at trial, whatever was said was sufficient to upset the girls and make at least one of them cry. The three girls approached Officer Pruitt, who was acting as the school crossing guard that day, and told her what Barry had said. Officer Pruitt decided to discuss the matter with Barry and his wife in an effort to resolve the problem.
When Officer Pruitt approached Barry to ask about the incident with the girls, Barry loudly told Officer Pruitt to mind her "own f____ing business." When Officer Pruitt continued to try to speak with Barry, he again told her to mind her "own f____ing business." After Barry started to get into his car, Officer Pruitt attempted to speak with Barry's wife about the incident with the girls. At that point, Barry got out of his car, came around to the passenger side, and began screaming obscenities at Officer Pruitt while pointing and shaking his finger in her face.
According to Officer Pruitt, while this confrontation was occurring, traffic along the road in front of the elementary school was slowing and stopping to watch the confrontation. One motorist allegedly yelled something about Barry preparing to hit Officer Pruitt. However, there was no testimony that any of the motorists got out of their cars or otherwise reacted to the scene itself. Based on this evidence, the trial court denied Barry's motion for judgment of acquittal on this count, and the jury subsequently found Barry guilty. Barry now appeals this conviction.
Section 877.03, Florida Statutes (2004), states, in pertinent part:
Breach of the peace; disorderly conduct.  Whoever commits such acts as are of a nature to corrupt the public morals, or outrage the sense of public decency, or affect the peace and quiet of persons who may witness them, or engages in brawling or fighting, or engages in such conduct as to constitute a breach of the peace or disorderly conduct, shall be guilty of a misdemeanor of the second degree....
In order to avoid possible constitutional problems, the supreme court has narrowed the scope of the conduct that may be punished under section 877.03:
In light of these considerations, we now limit the application of Section 877.03 so that it shall hereafter only apply either to words which "by their very utterance. . . inflict injury or tend to incite an immediate breach of the peace," or to words, known to be false, reporting some physical hazard in circumstances where such a report creates a clear and *658 present danger of bodily harm to others. We construe the statute so that no words except "fighting words" or words like shouts of "fire" in a crowded theatre fall within its proscription, in order to avoid the constitutional problem of overbreadth, and "the danger that a citizen will be punished as a criminal for exercising his right of free speech." With these two exceptions, Section 877.03 should not be read to proscribe the use of language in any fashion whatsoever.
State v. Saunders, 339 So.2d 641, 644 (Fla. 1976) (internal citations omitted) (quoting White v. State, 330 So.2d 3, 7 (Fla.1976), and Spears v. State, 337 So.2d 977, 980 (Fla.1976)).
Considering the statute as limited by Saunders, it is clear that speech alone will not generally support a conviction for disorderly conduct. For example, in Miller v. State, 780 So.2d 197 (Fla. 2d DCA 2001), the defendant's actions involved only loud and aggressive speech directed at a police officer who had come to her residence. This court reversed the conviction for disorderly conduct, noting that Miller's conduct was entirely verbal until after the officer initiated the arrest. See also Macon v. State, 854 So.2d 834, 837 n. 1 (Fla. 5th DCA 2003) ("Words alone generally will not support a conviction for disorderly conduct."); Miller v. State, 667 So.2d 325, 328 (Fla. 1st DCA 1995) (reversing conviction for disorderly conduct and noting that there must be evidence of "something more than loud or profane language and a belligerent attitude" to support a conviction for disorderly conduct).
On the other hand, protected speech can be rendered unprotected by a defendant's additional physical actions. For example, in C.L.B. v. State, 689 So.2d 1171, 1172 (Fla. 2d DCA 1997), C.L.B. not only engaged in loud verbal protests and name-calling, but he also repeatedly approached the officer and an arrestee so closely that the officer repeatedly had to push C.L.B. aside and tell him to stay away. This court noted that while C.L.B.'s words alone would be insufficient to support the adjudication for disorderly conduct, the combination of the words and his actions, which hindered the officer's ability to complete the arrest, was sufficient to support the adjudication. Id.; see also Wiltzer v. State, 756 So.2d 1063, 1066 (Fla. 4th DCA 2000) (holding that Wiltzer's words in combination with his nonverbal acts of bumping into the police officer, brushing the officer aside, and throwing his wallet at the officer were sufficient to support a conviction for disorderly conduct).
Here, the only evidence presented at the trial to support the disorderly conduct charge was that Barry yelled obscenities at Officer Pruitt concerning her actions. No evidence was presented that the words used were "fighting words" or words that would tend to incite an immediate breach of the peace. Further, the State presented no evidence that Barry engaged in any physical conduct toward Officer Pruitt that affected Officer Pruitt's ability to do her job or that breached the peace or otherwise incited others to act. Therefore, the State did not prove that Barry was guilty of disorderly conduct as that offense has been defined and limited.
The State contends that Barry's conviction should be upheld because drivers along the roadway slowed or stopped while Barry was yelling, thus causing a "crowd" to gather and causing Officer Pruitt to fear for the safety of children crossing the street. The State correctly points out that when a defendant's words are sufficient to cause a crowd to gather to such an extent that officers develop safety concerns, convictions for disorderly conduct have been affirmed. See, e.g., Marsh v. State, 724 *659 So.2d 666 (Fla. 5th DCA 1999) (affirming conviction for disorderly conduct because defendant's "tirade" caused a crowd of more than ten people to gather, which raised concerns for officer safety); W.M. v. State, 491 So.2d 335 (Fla. 3d DCA 1986) (affirming adjudication for disorderly conduct because defendant's actions of yelling and running around the stopped car drew a hostile crowd of fifty to seventy-five people and resulted in the police calling for back-up due to safety concerns).
However, the mere fact that other people come outside or stop to watch what is going on is insufficient to support a conviction for disorderly conduct. Instead, there must be some evidence that the crowd is actually responding to the defendant's words in some way that threatens to breach the peace. See, e.g., Gonzales v. City of Belle Glade, 287 So.2d 669, 670 (Fla.1973) (reversing disorderly conduct conviction because there was no evidence that the defendant's words were anything other than an annoyance to those around them); K.S. v. State, 697 So.2d 1275, 1276 (Fla. 3d DCA 1997) (reversing adjudication for disorderly conduct even though a crowd gathered to watch the goings-on because the crowd did not respond to K.S.'s words or attempt to otherwise breach the peace); B.R. v. State, 657 So.2d 1184, 1186 (Fla. 1st DCA 1995) (reversing adjudication for disorderly conduct even though everyone in a nearby laundry came out and passersby stopped to watch when there was no evidence that the defendant's yelling incited anyone in the area to an immediate breach of the peace).
Here, the State presented some evidence that motorists slowed down to watch the interaction between Barry and Officer Pruitt. However, the State presented no evidence that these individuals actually responded to Barry's words or that anyone in the area was actually incited into engaging in an immediate breach of the peace. At most, the State proved that onlookers slowed because they were curious or annoyed. Thus, the evidence that onlookers stopped or slowed to watch Barry yell obscenities at Officer Pruitt, without more, is insufficient to support the conviction.
Because the State's evidence was insufficient to support Barry's conviction for disorderly conduct, we reverse that conviction. In all other respects, we affirm.
Affirmed in part; reversed in part.
CASANUEVA and VILLANTI, JJ., Concur.