SALCINES, Judge.
David Lee Smith appeals his conviction for disorderly conduct and the consecutive habitual felony offender sentences imposed for two counts of battery on a law enforcement officer.[1] We affirm in part, reverse in part, and remand for resentencing.
The events leading to Smith’s convictions commenced on April 21, 2004, when he visited a bank in order to secure a Small Business Administration Loan. Smith was informed by the assistant bank manager that in order to qualify for such a loan it was necessary that he have an existing business. In response, Smith began to use profanity directed at the bank and at the assistant manager. Smith also accused the assistant manager of stealing his pen. The assistant manager told Smith he would have to stop cursing or he would have to leave the bank. Smith requested that the assistant manager call the police, and this was done.
While waiting for the police to arrive, Smith continued to curse loudly and the assistant manager stood between Smith and the customers standing in line to see the bank’s tellers. The assistant manager testified that he walked “slowly trying to get towards the front door, taking a step at a time and [Smith] would kind of follow.” The bank was relatively busy, and the customers could hear Smith’s verbal abuse of the assistant manager. The assistant manager testified that “there were a lot of comments made afterwards on the language that was used.” There was no testimony that the customers reacted in any other manner to Smith’s tirade.
By the time the bank manager and Smith reached the front door, Officer Jennifer Elrod of the Winter Haven Police Department arrived. Smith continued to curse and then directed his comments at the police officer. Smith straddled his bicycle located outside the bank. According to the officer, Smith was “very loud and very obnoxious.” Officer Elrod testified that she gave Smith the options either to leave the area or to be arrested. According to her report he responded in very vulgar and threatening terms. Although she repeated the options available to him, Smith refused to leave the area, and Officer Elrod called for a back-up officer. No *939 testimony was presented indicating that the general public outside the bank had any reaction to Smith’s statements to the police officer.
When Officer Monty Taylor arrived, Smith was informed that he was going to be placed under arrest. The officers requested that he dismount from the bicycle. When Smith refused to comply, Officer Elrod grabbed Smith by the arm in an attempt to remove him from the bicycle. Smith “tensed up” in order to stay on the bicycle. At that point, Officer Taylor also grabbed Smith by the arm, and the two officers pulled him from the bicycle. While the officers attempted to restrain Smith, he grabbed Officer Taylor by his forearm in “an aggressive manner” causing an abrasion and a minor cut to Officer Taylor’s forearm. Additionally, when grabbing Officer Taylor, Smith threw his elbow back and hit Officer Elrod on the side of her face. Subsequently, Smith was subdued by the two officers, and he was placed in handcuffs.
While the foregoing evidence .clearly demonstrates that Smith committed the offense of battery on each of the law enforcement officers, the evidence does not support the conviction for disorderly conduct for Smith’s actions and words inside or outside the bank. Section 877.03, Florida Statutes (2003), defines the offense:
Breach of the peace; disorderly conduct. Whoever commits such acts as are of a nature to corrupt the public morals, or outrage the sense of public decency, or affect the peace and quiet of persons who may witness them, or engages in brawling or fighting, or engages in such conduct as to constitute a breach of the peace or disorderly conduct, shall be guilty of a misdemeanor of the second degree....
The actions prohibited by the statute are not clearly delineated, and over time there have been numerous constitutional challenges to section 877.03 based on vagueness. In State v. Saunders, 339 So.2d 641, 644 (Fla.1976), the supreme court discussed the prior constitutional challenges to the statute and concluded:
In light of these considerations, we now limit the application of Section 877.03 so that it shall hereafter only apply either to words which “by their very utterance ... inflict injury or tend to incite an immediate breach of the peace,” White v. State, 330 So.2d [3, 7 (Fla.1976) ]; See Chaplinsky v. New Hampshire, 315 U.S. 568, 572, 62 S.Ct. 766, 86 L.Ed. 1031 (1942); or to words, known to be false, reporting some physical hazard in circumstances where such a report creates a clear and present danger of bodily harm to others. We construe the statute so that no words except “fighting-words” or words like shouts of “fire” in a crowded theatre fall within its proscription, in order to avoid the constitutional problem of overbreadth, and “the danger that a citizen will be punished as a criminal for exercising his right of free speech.” Spears v. State, supra, 337 So.2d [977, 980 (Fla.1976) ]. With these two exceptions, Section 877.03 should not be read to proscribe the use of language in any fashion whatsoever.
The facts involved in the present case do not meet the limited application of section 877.03 as dictated by the supreme court in Saunders. This court reached the same conclusion in Barry v. State, 934 So.2d 656, 659 (Fla. 2d DCA 2006), when it was confronted with an incident that is factually similar to the present case. In that case, the father of a child was in a verbal confrontation with a police officer who was acting as a crossing guard outside an elementary school. The father screamed insults and obscenities at the officer and shook his finger in her face. The officer testified that traffic outside the elementary school slowed and stopped as individuals *940 watched the confrontation. However, none of the motorists exited their vehicles or otherwise reacted to the words or actions of the father.
In reversing the father’s conviction for disorderly conduct, this court observed that in order to avoid possible constitutional problems, Saunders had narrowed the scope of conduct punishable under section 877.03. In Barry, we noted that cases have upheld convictions for disorderly conduct when a defendant’s actions have caused a crowd to gather to such an extent as to cause an officer to develop safety concerns. 934 So.2d at 658-59. However, this court concluded that the mere fact that “other people come outside or stop to watch what is going on is insufficient to support a conviction for disorderly conduct. Instead, there must be some evidence that the crowd is actually responding to the defendant’s words in some way that threatens to breach the peace.” Id. at 659. In the present case, as in the Barry case, there was no evidence that witnesses responded to Smith’s words in any particular manner or that anyone in the area was actually incited to engage in an immediate breach of the peace. At most, it appears from the testimony that the witnesses were either curious or annoyed. The conviction for disorderly conduct must be reversed.
Although, as noted above, the evidence does not support the conviction for disorderly conduct, the evidence clearly supports Smith’s convictions for battery on each of the law enforcement officers. While Smith does not challenge these convictions, he asserts that a sentencing error occurred in regard to the battery convictions. Smith specifically argues that the trial court erred when it imposed consecutive habitual felony offender sentences for each of the batteries on law enforcement officers which stemmed from a single criminal episode.[2] See State v. Hill, 660 So.2d 1384, 1385 (Fla.1995); Hale v. State, 630 So.2d 521, 525 (Fla.1993); Wallace v. State, 673 So.2d 910, 911 (Fla. 2d DCA 1996) (holding habitual felony offender sentence may not further be enhanced by ordering sentences to be served consecutively if the violations occurred during a single criminal episode).
The courts have recognized that there is no bright-line test for determining whether a criminal episode is “single” for purposes of evaluating consecutive enhancement sentences. See Wilcher v. State, 787 So.2d 150, 152 (Fla. 4th DCA 2001). Generally the courts have considered factors such as whether separate victims are involved, whether the crimes occur in separate locations, and whether there has been a temporal break between the incidents. See Smith v. State, 650 So.2d 689, 691 (Fla. 3d DCA 1995). In the present case, the two acts of battery on a law enforcement officer occurred in one location-outside the bank. Smith’s action of grabbing Officer Taylor’s arm and hitting Officer Elrod with his elbow were part of a single criminal action as he resisted arrest. The consecutive sentences must be reversed. On remand, concurrent sentences must be imposed.
We affirm Smith’s convictions for resisting a law enforcement officer with violence and for battery on law enforcement officers. We reverse the conviction for disorderly conduct and the consecutive sentences imposed for battery on law enforcement officers.
*941 Affirmed in part, reversed in part, and remanded with directions.
NORTHCUTT, C.J., and CANADY, J., Concur.

. Smith was also convicted of resisting a law enforcement officer with violence. He does not appeal that judgment or sentence.

. Smith preserved this error for appellate review by objecting to the consecutive sentences at the sentencing hearing.