[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 12-11118
_____

D.C. Docket No. 1:11-cv-20525-PAS

GINA PETITHOMME,

Plaintiff - Appellee,

versus

COUNTY OF MIAMI-DADE, et al.,

Defendants,

OFFICER RONALD MARTIN,
in his official and individual capacity,
OFFICER JESUS GONZALEZ,
in his official and individual capacity,

Defendants – Appellants.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(March 8, 2013)

Before CARNES and BLACK, Circuit Judges, and RESTANI,[*] Judge.

PER CURIAM:

Plaintiff-Appellee Gina Petithomme ("Plaintiff") alleges violations of her constitutional rights under 42 U.S.C. § 1983 and a false arrest/false imprisonment claim under Florida law against Officers Ronald Martin and Jesus Gonzalez ("Officers" or "Appellants").[1]   For the following reasons, we affirm the district court's denial of Appellants' motion to dismiss based on qualified immunity.

## BACKGROUND

We summarize the allegations as contained in Plaintiff's Third Amended Complaint ("Complaint").   In February 2009, the Officers were dispatched to investigate a suspicious vehicle located at the corner of 148th Street and Northwest 10th Place.   The Officers were told that the suspicious vehicle was a white Dodge with two black males inside.   While driving by Plaintiff's house, which was not located at the corner of 148th Street and Northwest 10th Place, the Officers observed a silver Nissan sedan with a piece of white paper obstructing the tag.   The silver

---

[*]   Honorable Jane A. Restani, United States Court of International Trade Judge, sitting by designation.

[1]   This action named Miami-Dade County as an additional defendant and alleged an intentional infliction of emotional distress claim.   The district court previously dismissed with prejudice all claims asserted against Miami-Dade County and the intentional infliction of emotion distress claim, and these claims are not before us on appeal.

2

Nissan was parked within the curtilage of Plaintiff's home on private property. When the Officers approached the vehicle, they found the Plaintiff, a black female, alone in the car. The Officers informed Plaintiff they were investigating a suspicious vehicle and requested Plaintiff's identification for her vehicle. Plaintiff responded by asking the Officers "[w]hat was the description of the vehicle." The Officers ignored her question and asked a second time for identification. The Officers asked if they could search Plaintiff's vehicle, and Plaintiff responded in the negative. After a third request for identification, Plaintiff asked if she could go into her home to retrieve the identification.

While Plaintiff was searching for the identification in her home, Officer Martin opened the unlocked vehicle to look for proof of ownership. Plaintiff returned outside and asked the Officers why they were searching her vehicle. Officer Martin asked Plaintiff for the fourth time to show identification. Plaintiff told the Officers that she had been mistaken and that the identification must be in her vehicle. Four additional police officers arrived at the scene, and neighbors exited their homes. Plaintiff then found her identification and produced it by placing it in Officer Martin's "line of vision" and said "[h]ere's my identification." Officer

3

Martin then placed Plaintiff under arrest.[2]   Plaintiff was charged with disorderly conduct/disturbing the peace.   The charge was later dismissed.

Plaintiff then brought this action, and the Officers moved to dismiss all claims based on federal qualified immunity and state official immunity.   The district court denied the motion to dismiss the civil rights claims and the state false arrest claim asserted against Officer Gonzalez, except as to the search, and denied the motion as to all civil rights claims and state false arrest claim asserted against Officer Martin.[3] The Officers now appeal.

## STANDARD OF REVIEW

When a defendant raises the defense of qualified immunity in a motion to dismiss, we "review the denial of [the motion] de novo and determine whether the complaint alleges a clearly established constitutional violation, accepting the facts alleged in the complaint as true, drawing all reasonable inferences in the plaintiff's favor, and limiting our review to the four corners of the complaint."   Keating, 598

---

[2]   The Officers assert that Plaintiff became aggressive when producing the identification and that she yelled at Officer Martin.   We do not credit these factual allegations because they are not alleged in the Complaint and the police report containing such statements was not attached as an exhibit to the Third Amended Complaint.   See Keating v. City of Miami, 598 F.3d 753, 762 (11th Cir. 2010) (noting appellate review of motion to dismiss based on qualified immunity is limited to the four corners of the complaint).

[3]   The district court found that Plaintiff failed to allege any facts that Officer Gonzalez participated in the search of Plaintiff's vehicle and granted the motion to dismiss as to the search for Officer Gonzalez only.

4

F.3d at 762 (citation omitted).

## DISCUSSION

"Once the defendants establish that they were acting within their discretionary authority, the burden shifts to the plaintiff to demonstrate that qualified immunity is not appropriate." Lumley v. City of Dade City, 327 F.3d 1186, 1194 (11th Cir. 2003). To evaluate whether a government official is entitled to qualified immunity, the court must determine "whether the plaintiff's allegations, if true, establish a constitutional violation" and whether the right violated was clearly established. Vinyard v. Wilson, 311 F.3d 1340, 1346 (11th Cir. 2002) (brackets and citations omitted).

## I.    Unreasonable Seizure (Count 1)

The Officers argue that they are entitled to qualified immunity because they had probable cause, or at least arguable probable cause, to arrest Plaintiff for three violations of state law: (1) having an obstructed vehicle tag under Fla. Stat. § 316.605; (2) resisting an officer without violence under Fla. Stat. § 843.02; and (3) disorderly conduct under Fla. Stat. § 877.03.

"[W]hen the claim is that a search and seizure or arrest violated the Fourth Amendment, qualified immunity depends upon whether arguable probable cause existed." Cottrell v. Caldwell, 85 F.3d 1480, 1485 n.1 (11th Cir. 1996). Probable

5

cause exists when "the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense."   Lee v. Ferraro, 284 F.3d 1188, 1195 (11th Cir. 2002) (quotation marks and citation omitted).   "Arguable probable cause exists where reasonable officers in the same circumstances and possessing the same knowledge as the Defendant could have believed that probable cause existed to arrest."   Rushing v. Parker, 599 F.3d 1263, 1266 (11th Cir. 2010) (citation omitted).

### a.    The Obstructed Tag

The Officers argue that they had at least arguable probable cause to believe that Plaintiff had either just committed a traffic violation by having driven on a public street with an illegally obscured tag or was about to commit a violation by pulling out into the public street with an illegally obscured tag.

"Whether a particular set of facts gives rise to probable cause or arguable probable cause to justify an arrest for a particular crime depends, of course, on the elements of the crime."   Crosby v. Monroe County, 394 F.3d 1328, 1333 (11th Cir. 2004).   Under Florida law:

> Every vehicle, at all times while driven, stopped, or parked upon any highways, roads, or streets of this state, shall . . . display the license plate . . . and all letters, numerals, printing, writing, and other identification marks upon the plates regarding the word "Florida," the

6

registration decal, and the alphanumeric designation shall be clear and distinct and free from defacement, mutilation, grease, and other obscuring matter, so that they will be plainly visible and legible at all times 100 feet from the rear or front . . . No vehicle license plate may be displayed . . . in such a manner that the letters and numbers and their proper sequence are not readily identifiable.

Fla. Stat. § 316.605.   Here, the facts and circumstances known to the Officers at the time of the arrest, as alleged, are that Plaintiff was sitting inside a vehicle in the driveway of a home, the Officers observed the vehicle's "[b]rake lights come on and off" and there "was a white paper obstructing the tag."   The Officers argue that because they observed the vehicle's brake lights come on and off there was arguable probable cause to believe Plaintiff either recently drove on a public street or was about to drive on a public street with an obstructed tag.

Although brake lights coming on and off indicate the vehicle had electrical power, the use of brake lights is not "reasonably trustworthy information" indicating where a vehicle has traveled or is about to travel.   See Ferraro, 284 F.3d at 1195 (noting probable cause is based on facts and circumstances of which an officer has "reasonably trustworthy information").   Brake lights coming on and off may give rise to a suspicion that the vehicle may soon travel on a public street, but probable cause and arguable probable cause for an arrest require "more than mere suspicion." Rankin v. Evans, 133 F.3d 1425, 1435 (11th Cir. 1998).

7

**b.    Resisting an Officer without Violence**

The Officers also maintain that there was at least arguable probable cause to arrest Plaintiff pursuant to Fla. Stat. § 843.02 for resisting an officer without violence.   The Officers argue that Plaintiff's failure to comply with their repeated requests for identification over a period of time either obstructed or was an attempt to obstruct the Officers from conducting a lawful investigation.

Under Florida law, "Whoever shall resist, obstruct, or oppose any officer . . . in the lawful execution of any legal duty, without offering or doing violence to the person of the officer, shall be guilty of a misdemeanor of the first degree . . . ."   Fla. Stat. § 843.02; see Post v. City of Ft. Lauderdale, 7 F.3d 1552, 1559 (11th Cir. 1993) (noting an attempt to oppose or obstruct an officer will also violate the statute). The statute requires that: "(1) the officer was engaged in the lawful execution of a legal duty; and (2) the defendant's action, by his words, conduct, or a combination thereof, constituted obstruction or resistance of that lawful duty."   C.E.L. v. State, 24 So. 3d 1181, 1185–86 (Fla. 2009).

Plaintiff makes a belated attempt before us to claim that the vehicle did not have an obstructed tag, but we assume, for purposes of this appeal, that the tag was obstructed, the Officers had reasonable suspicion to investigate this circumstance on

8

Plaintiff's property, and the initial Terry[4] stop of Plaintiff was valid.   Thus, we assume that the Officers were engaged in the lawful execution of a legal duty when they began their interaction with Plaintiff, and we address only whether a reasonable officer could have believed Plaintiff's actions during the encounter amounted to obstruction or an attempt to obstruct that lawful investigation.

Here, the Complaint indicates that Plaintiff "asked if she could go into her home to retrieve her identification."   This allegation, taken as true, indicates that Plaintiff did not refuse to provide the identification but instead was attempting to comply with the Officers' request.   The Complaint does not contain factual support for the Officers' position that Plaintiff was using "delay tactics" or that Plaintiff "refused" to provide identification.   Cf. Storck v. City of Coral Springs, 354 F.3d 1307, 1316 (11th Cir. 2003) (finding probable cause to arrest when arrestee caused two hour "stand-off" by rushing back into her house after seeing officers, refusing to come to the door, ignoring the police's requests from a bullhorn, refusing to answer the phone for over a half hour, and repeatedly placing the police on hold for an additional half hour); J.M. v. State, 960 So. 2d 813, 815 (Fla. Dist. Ct. App. 2007) (finding violation of statute because juvenile refused to leave park after being ordered to leave for public safety reasons).   For example, the Complaint does not

---

[4]   Terry v. Ohio, 392 U.S. 1 (1968).

9

indicate that Plaintiff blocked the police from communicating with her, verbally refused to provide identification, avoided searching, feinted a search, or challenged the Officers' ability to request her identification.

Given the facts of the Complaint, a reasonable officer could not have concluded that Plaintiff was acting to or was attempting to "resist, obstruct or oppose" the Officers from viewing her identification merely because, while in the process of searching, she could not locate the identification for the vehicle as quickly as the Officers would have liked.   See J.M. v. State, 960 So. 2d at 815 (noting obstruction statute is generally "intended to apply when a person willfully interferes with an officer's lawful activities").   This is especially so when the Officers contributed to the delay by conducting an unauthorized and warrantless search of her vehicle, which, not surprisingly, provoked a response from Plaintiff and interrupted her search.

Plaintiff's questions directed towards the Officers as to what type of vehicle they were investigating and why they were searching her vehicle cannot give rise to arguable probable cause because verbal interruptions and simple inquiries as to an officer's purpose cannot be construed as obstruction under Florida law.   See Davis v. Williams, 451 F.3d 759, 767 (11th Cir. 2006) (interpreting Florida obstruction and disorderly conduct statutes) (finding "an owner's simple inquiry as to why

10

officers are present on his property" cannot give rise to arguable probable cause for obstruction).   Thus, Plaintiff's questions and failure to produce identification as quickly as the Officers would have wished did not give rise to arguable probable cause for the arrest.

### c.    Disorderly Conduct

The Officers also argue that they had arguable probable cause to arrest Plaintiff for disorderly conduct pursuant to Fla. Stat. § 877.03.   The statute provides that:

> Whoever commits such acts as are of a nature to corrupt the public morals, or outrage the sense of public decency, or affect the peace and quiet of persons who may witness them, or engages in brawling or fighting, or engages in such conduct as to constitute a breach of the peace or disorderly conduct, shall be guilty of a misdemeanor of the second degree.

Fla. Stat. § 877.03.   The Officers assert arguable probable cause based on the fact that Plaintiff asked several questions, she was upset, she placed the identification in Officer Martin's line of sight, and neighbors exited their homes.

Plaintiff's questions directed towards the Officers cannot demonstrate arguable probable cause for disorderly conduct.   Under Florida law, screaming obscenities at an officer is not sufficient to violate the statute, and thus, no reasonable officer could have concluded that asking an officer a benign question could constitute a violation of the statute.   See Davis v. Williams, 451 F.3d at 766

11

(finding arrestee's questions could not give rise to probable cause for disorderly conduct even though defendant continued to ask questions after officer instructed him to leave the scene four times); Barry v. State, 934 So. 2d 656, 658 (Fla. Dist. Ct. App. 2006) (reversing conviction for disorderly conduct when defendant cursed and screamed obscenities at officer).

Moreover, it is clear from Florida law that merely being upset is insufficient to establish arguable probable cause for disorderly conduct because far more egregious conduct is insufficient to violate the statute.   See Miller v. State, 780 So. 2d 197, 197–98 (Fla. Dist. Ct. App. 2001) (reversing conviction for disorderly conduct when defendant directed loud and aggressive speech towards officers who were conducting investigation in her house); Miller v. State, 667 So. 2d 325, 328 (Fla. Dist. Ct. App. 1995) (noting "there must be evidence of something more than loud or profane language or a belligerent attitude" to support a disorderly conduct charge).

Furthermore, the mere fact that neighbors exited their home and observed the scene is not, of itself, sufficient to give rise to arguable probable cause for disorderly conduct unless there is "some evidence that the crowd is actually responding to the defendant's words in some way that threatens to breach the peace."   See Barry, 934 So. 2d at 659 (noting gathering crowds and people stopping to watch are not sufficient to establish a disorderly conduct charge).   Here, there are no allegations

12

in the Complaint to support a finding that the Officers could have believed the neighbors were responding to Plaintiff's words in a way that threatened to breach the peace.

Finally, we find that no reasonable officer could have found that complying with the Officers' request by placing the identification in Officer Martin's line of vision could give rise to arguable probable cause for disorderly conduct, even if Plaintiff was upset at the time.  See Barry, 934 So. 2d at 657–58 (noting that violation of the statute requires some physical conduct toward the officers that affects the officers' ability to do their job, breaches the peace, or otherwise incites others to act, and reversing conviction of defendant who yelled obscenities while pointing finger in officer's face).   Given the totality of the above circumstances, the Officers lacked arguable probable cause to arrest Plaintiff for disorderly conduct.

Thus, Plaintiff's Complaint alleges a violation of the clearly established constitutional right to not be arrested absent probable cause, and the district court properly denied the Officers' motion to dismiss based on qualified immunity as to the seizure.

## II.    Unreasonable Search (Count 2)

Appellants argue that Officer Martin had probable cause to search the vehicle given the totality of the circumstances.

13

The law is clear that under the automobile exception to the warrant requirement, which is the only one at issue here, an officer may search a vehicle without a warrant only where there is probable cause to believe the vehicle contains contraband or other evidence which is subject to seizure.   United States v. Talley, 108 F.3d 277, 281 (11th Cir. 1997).   Probable cause exists when the totality of the circumstances leads a reasonable person to believe that the vehicle contains contraband or evidence of a crime.   Illinois v. Gates, 462 U.S. 213, 230 (1983).

Here, Plaintiff and her vehicle did not match the descriptions or the location given by dispatch.   Thus, the only circumstances suggesting illegal activity was the white paper obstructing Plaintiff's tag.   The obstructed tag, however, is insufficient to lead a reasonable person to believe that evidence relating to this infraction would be found inside the vehicle.   Although Defendants contend that Plaintiff's numerous failures to produce identification create a "fair probability" that Plaintiff was not the true owner of the vehicle or that she could have been "up to no good," these suspicions do not suffice to establish arguable probable cause, especially considering that Plaintiff was in the process of attempting to retrieve the identification when the illegal search took place.   Thus, the district court properly denied Officer Martin qualified immunity as to the search because Plaintiff's Complaint alleges the violation of a clearly established constitutional right.

14

### III. First Amendment and False Arrest/False Imprisonment Claims (Count 3 & 4)

The Officers' argument that they are entitled to qualified immunity as to Plaintiff's First Amendment claim and false arrest/false imprisonment state law claim hinges on the court's concluding that the Officers had probable cause to arrest for the three state law offenses.   As discussed above, however, the Officers lacked probable cause to arrest for those offenses, and thus, the Officers are not entitled to qualified or official immunity for the First Amendment and state law claims.   See Rankin, 133 F.3d at 1433 (noting standards for probable cause are the same under Florida and federal law).

On appeal, Appellants do not dispute the district court's conclusions that the law concerning the unlawfulness of arresting a person solely for speech is clearly established or that the Complaint sufficiently alleged bad faith on behalf of the Officers.   Thus, we need not address these issues, and we affirm the district court's denial of qualified immunity for the First Amendment claim and the denial of official immunity for the state law claims.

### CONCLUSION

Based on the aforementioned reasons, the district court's denial of Appellants' motion to dismiss based on qualified immunity is **AFFIRMED**.

15