# DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
## FOURTH DISTRICT

**DUCKENS OXYDE,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D2024-1405

[May 14, 2025]

Appeal from the County Court for the Fifteenth Judicial Circuit, Palm Beach County; Ashley Zuckerman, Judge; L.T. Case No. 50-2023-MM-008894-AXXX-MB.

Daniel Eisinger, Public Defender, and Jeffrey L. Anderson, Assistant Public Defender, West Palm Beach, for appellant.

James Uthmeier, Attorney General, Tallahassee, and Richard Valuntas, Senior Assistant Attorney General, West Palm Beach, for appellee.

BRISTOW, APRIL, Associate Judge.

Duckens Oxyde ("Defendant") appeals his judgment and sentence for disorderly conduct, arguing: (1) the evidence was insufficient to support his conviction; and (2) the trial court erred in admitting evidence of Defendant's use of offensive slurs during the crime. For the reasons set forth below, we affirm.

## **Background**

Defendant was arrested and charged with disorderly conduct following a prolonged disturbance at his estranged wife's apartment building. The evidence presented at trial established that Defendant first went to the building around 9:00 p.m., but could not gain entry. Nonetheless, Defendant stood outside the building shouting obscenities directed at his wife while demanding money. He then encountered a resident and demanded entry into the building. When the resident refused, he called the resident a slur and continued to shout, play loud music on his phone, and throw rocks at the exterior of the building. Law enforcement was

dispatched to the scene and attempted to defuse the situation by speaking with Defendant.

During the initial law enforcement encounter, which was captured on body-worn camera, Defendant belligerently insisted that he had a right to be at his estranged wife's residence because she owed him money. Ultimately, law enforcement informed Defendant that he needed to leave the premises, after which law enforcement left the scene.

Shortly after law enforcement left, however, Defendant gained entry into the building by following another resident inside. Defendant then banged on and tried to forcibly open his estranged wife's door while demanding money. As established by doorbell camera footage, Defendant's estranged wife refused to answer the door and told him to leave several times. Unpersuaded, Defendant continued to shout obscenities while trying to open the door. For instance, Defendant used the word "n*****" several times (seemingly referencing himself as well as his estranged-wife's alleged new boyfriend) and repeatedly called his estranged-wife a "b****" and a "h*." Defendant also paced up and down the hallway while playing loud music and shouting. At one point, he stopped in front of the door of the resident who would not grant him access earlier in the evening and yelled insults at that resident.

Defendant's conduct was so disruptive that it woke up at least three other residents, each of whom opened their doors. One of the residents was awakened from a deep sleep despite being severely hearing impaired. That resident was so upset that he engaged in a verbal altercation with Defendant, which led the resident to fear that Defendant was going to "approach" him. All in all, the witnesses testified that Defendant's behavior inside the building went on for about thirty minutes and was "out of control" and "completely unhinged." Eventually, law enforcement came back to the building and arrested Defendant. A jury found Defendant guilty as charged.

## Analysis

### 1) Denial of Motion for Judgment of Acquittal

When the State rested its case, Defendant moved for a judgment of acquittal on the basis that speech alone is insufficient to sustain a conviction for disorderly conduct. The trial court denied the motion, reasoning that Defendant's behavior was comprised of more than speech and sufficiently disturbed the building's residents. We affirm this ruling.

2

Section 877.03, Florida Statutes (2023), "Breach of the peace; disorderly conduct," provides:

> Whoever commits such acts as are of a nature to corrupt the public morals, or outrage the sense of public decency, or affect the peace and quiet of persons who may witness them, or engages in brawling or fighting, or engages in such conduct as to constitute a breach of the peace or disorderly conduct, shall be guilty of a misdemeanor of the second degree, punishable as provided in s. 775.082 or s. 775.083.

The Florida Supreme Court has instructed that convictions under section 877.03 cannot be based on speech alone unless the speech caused witnesses to react in a manner which threatens to breach the peace. *State v. Saunders*, 339 So. 2d 641, 644 (Fla. 1976) (holding that words alone cannot constitute disorderly conduct less they are "fighting words" or "words like shouts of 'fire' in a crowded theatre"). Thus, the fact that speech draws curiosity or annoyance from onlookers is, standing alone, insufficient to support a conviction for disorderly conduct. *See, e.g., St. Fleury v. State*, 244 So. 3d 330, 332 (Fla. 4th DCA 2018) (evidence that defendant's altercation with a manager of a pet store disrupted and annoyed other shoppers was insufficient to support a conviction for disorderly conduct); *Smith v. State*, 967 So. 2d 937 (Fla. 2d DCA 2007) (defendant who cursed and yelled at bank employees could not be convicted of disorderly conduct—even though the defendant's belligerent conduct attracted the attention of other patrons—because "there was no evidence that witnesses responded to [defendant's] words in any particular manner or that anyone in the area was actually incited to engage in an immediate breach of the peace"); *Barry v. State*, 934 So. 2d 656, 659 (Fla. 2d DCA 2006) ("[T]he mere fact that other people come outside or stop to watch what is going on is insufficient to support a conviction for disorderly conduct.").

Conversely, speech which incites or threatens to incite action by observers may be sufficient to support such a charge. *See Marsh v. State*, 724 So. 2d 666 (Fla. 5th DCA 1999) (affirming conviction for disorderly conduct when defendant's "loud, belligerent, accusatory tirade" targeted at a police officer "excited" a gathering crowd to the extent that a second officer developed safety concerns); *W.M. v. State*, 491 So. 2d 335 (Fla. 3d DCA 1986) (defendant's conduct of running around and shouting profanities at police officers supported conviction for disorderly conduct when defendant's conduct drew a "large hostile crowd").

Additionally, belligerent speech accompanied by disruptive physical acts is also sufficient to support a disorderly conduct conviction. *Wiltzer v. State*, 756 So. 2d 1063, 1066 (Fla. 4th DCA 2000) (affirming disorderly conduct conviction where, in addition to disruptive verbal conduct which disturbed observers, defendant threw his wallet at a police officer); *C.L.B. v. State*, 689 So. 2d 1171, 1171 (Fla. 2d DCA 1997) (affirming disorderly conduct conviction because the defendant's "nonverbal acts disturbed or interfered with an arrest and, therefore, breached the peace").

Contrary to the cases cited by Defendant, in the instant case, Defendant's disorderly conduct conviction was not based on speech alone. In addition to yelling and cursing, Defendant threw rocks at the apartment building and continuously banged on and forcefully tried to open his estranged wife's door. In conjunction with Defendant's loud and disruptive speech, this physical conduct was sufficient to support Defendant's conviction. *See Williams v. State*, 340 So. 2d 498, 499 (Fla. 1st DCA 1976) ("Repeated banging on a door in an apartment complex at approximately 11:30 in the nighttime, thus creating a disturbance, is not such freedom of using mere words as a tool of communication that is constitutionally protected.").

Alternatively, in addition to Defendant's disruptive physical conduct, the facts taken in the light most favorable to the State establish that Defendant's speech threatened to breach the peace at one point. The majority of Defendant's conduct took place in a residential building during a time when most residents were asleep or preparing to go to sleep. Defendant's conduct was so loud and "out of control" that it caused several residents to wake up, get out of bed, and open their doors. Defendant's conduct also caused one resident to engage in a verbal altercation with Defendant. The resident testified that after he yelled at Defendant and told him to leave, Defendant stopped and looked at the resident. At that point, the resident thought Defendant was going to approach him and challenged Defendant with a "what?" Thus, Defendant's words and actions nearly incited a fight with the resident in the hallway. *Clanton v. State*, 357 So. 2d 455, 457 (Fla. 2d DCA 1978) ("Fighting words are those which are likely to cause the average person to whom they are addressed to fight.").

*2) Admission of Slurs*

Before trial, Defendant sought to exclude reference to his use of the slur directed at another resident, arguing that the admission of such evidence was irrelevant and unfairly prejudicial. The trial court found that because the State was required to prove Defendant outraged "the sense of public

decency or affected the peace and quiet of persons who witnessed the act or acts," his conduct, including the use of the slur, was directly relevant to the charge, but noted that it "would address any objections contemporaneously."

Now, on appeal, Defendant argues that the court erred in admitting any evidence that Defendant used slurs. Defendant's arguments on this point were not preserved for appeal. With respect to Defendant's use of slurs as depicted by body-worn and doorbell camera footage, Defendant did not make any objection below to this evidence. *See* § 924.051(3), Fla. Stat. (2023). With respect to Defendant's use of a slur as briefly testified to by one of the residents, while Defendant sought exclusion of this evidence in a pretrial motion in limine, the court's pre-trial ruling on that motion was equivocal and invited a further contemporaneous objection. No such objection was made. *See Philip Morris USA, Inc. v. Tullo,* 121 So. 3d 595, 601 (Fla. 4th DCA 2013) ("It is well established that pre-trial evidentiary rulings preserve an issue for appeal only if they are definitive and unequivocal as opposed to preliminary in nature."). Accordingly, Defendant failed to preserve his arguments for our consideration.

However, even assuming that the challenges to the admissions were preserved, no error occurred.

"Ordinarily, racial slurs and ethnic epithets are so prejudicial as to render them inadmissible, unless the probative value outweighs any prejudice that may result from having the jury hear them." *MCI Exp., Inc. v. Ford Motor Co.,* 832 So. 2d 795, 800 (Fla. 3d DCA 2002). In a criminal case, evidence that a defendant used slurs is admissible if the evidence is relevant to an element of the charged crime and is not used as an "attempt to inject race as an issue in the trial, or an impermissible appeal to bias and prejudice." *Jones v. State,* 748 So. 2d 1012, 1023 (Fla. 1999); *see also Miller v. State,* 379 So. 3d 1109, 1120–21 (Fla. 2024) (court did not err in permitting state to introduce defendant's anti-white social media posts during penalty phase of death penalty trial because posts were relevant to the motive of the defendant when targeting his victims); *Wimberly v. State,* 41 So. 3d 298, 303 (Fla. 4th DCA 2010) (defendant's reference to homicide victim with a racial epithet was relevant to premeditation); *Clinton v. State,* 970 So. 2d 412, 414 (Fla. 4th DCA 2007) (evidence that defendant screamed a slur after stabbing the victim was properly admitted to prove defendant acted with premeditated design to cause the victim's death); *DeJesus v. Sec'y, Fla. Dep't of Corr.,* No. 20-80190-Civ, 2022 WL 1262093, at *14 (S.D. Fla. Apr. 28, 2022) (defendant's use of racial epithet towards officer during resisting episode was properly deployed by a Florida state

court for the limited and proper purpose of establishing consciousness of guilt).

Here, Defendant's offensive slurs were directly relevant and material to an element of the underlying charge—namely whether Defendant's conduct affected the peace and quiet of witnesses to the conduct. Indeed, the fact that Defendant used offensive slurs certainly made it more likely to affect the witnesses as opposed to benign, but loud language.

Further, Defendant was not unfairly prejudiced by the admission of his offensive slurs. The State did not use Defendant's statements to inject race or an inappropriate appeal to bias in the trial. The slur aimed at the resident was referenced once at trial without further discussion. Similarly, the State did not refer to Defendant's slurs in either its opening statement or closing arguments. Rather, the State appropriately focused on the physicality/loudness of Defendant's conduct and the impact which Defendant's conduct had on the peace and quiet of the building's residents. Accordingly, we affirm.

*Affirmed.*

CONNER and KUNTZ, JJ., concur.

*     *     *

***Not final until disposition of timely filed motion for rehearing.***