DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**DUCKENS OXYDE,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D2024-1405

[July 16, 2025]

Appeal from the County Court for the Fifteenth Judicial Circuit, Palm Beach County; Ashley Zuckerman, Judge; L.T. Case No. 50-2023-MM-008894-AXXX-MB.

Daniel Eisinger, Public Defender, and Jeffrey L. Anderson, Assistant Public Defender, West Palm Beach, for appellant.

James Uthmeier, Attorney General, Tallahassee, and Richard Valuntas, Senior Assistant Attorney General, West Palm Beach, for appellee.

FORST, J.

On May 14, 2025, we affirmed the trial court's judgment and sentence adjudicating Duckens Oxyde ("Defendant") guilty of disorderly conduct under section 877.03, Florida Statutes (2023). The affirming panel included an Associate Judge. Defendant timely filed motions for rehearing and rehearing en banc. In addition to challenging the opinion's merits, the motions argue the Associate Judge previously assigned to this appeal should not be permitted to participate in the disposition of the case for two reasons. First, because the Associate Judge serves in the circuit where the case originated. Second, because the Associate Judge had previously presided over a hearing involving this case. The record indicates the Associate Judge had participated in the case for one minute, from 10:47 to 10:48 a.m. on November 9, 2023. The Associate Judge merely reset a hearing scheduled before her colleague for another date, one on which her colleague was available. We find neither basis sufficient to warrant recusal or disqualification of the Associate Judge.

However, prior to our consideration of these challenges, the Associate Judge voluntarily recused herself from the case. Consequently, our Chief Judge entered an order directing our Clerk of Court to randomly assign a new panel member to the case. *The new panel sua sponte withdraws the prior opinion and issues this opinion in its place.*

We affirm the trial court's judgment and sentence adjudicating Defendant guilty of disorderly conduct under section 877.03, Florida Statutes (2023). First, we reject, without discussion, Defendant's contention that the trial court erred in admitting any evidence of Defendant's use of "vulgar slurs" during the incident at issue. For the most part, Defendant's challenge was not preserved. Regardless, the probative value outweighed any prejudice that may have resulted from the slurs' admission.

Second, as discussed below, the totality of the evidence, evaluated in its proper context and with attention to the time, place, and manner of Defendant's conduct, supports the jury's finding of guilt. The trial court did not err in denying the motion for judgment of acquittal ("JOA").

**Background**

At approximately 9:00 p.m. on a Wednesday in October 2023, Defendant appeared at the apartment complex where his estranged wife resided. After being denied entry, he stood outside the locked building yelling profanities directed at his wife and demanding she give him money. The estranged wife testified that Defendant threw rocks at her apartment window. When an apartment resident ("Resident F") declined to open the apartment building's entrance door for Defendant, the latter called the resident "fa\*\*ot." Resident F testified to being "obviously transgender," and asserted the epithet made the resident feel targeted and uncomfortable. Law enforcement was summoned (apparently by Defendant) and arrived at approximately 9:30 p.m. After a profanity-laced encounter with the responding officers, Defendant was advised to leave the premises. He did not.

Later, Defendant followed another resident into the building. Once inside, he proceeded to his wife's second floor unit and commenced loudly pounding on his wife's door, while screaming insults, and playing music at a high volume. Video and testimony showed that he referred to himself and others using racial and sexual slurs (including multiple use of the "n-word") and referred to his wife as a "b\*\*\*\*" and "h\*." This behavior was observed by a number of the second floor's residents, some of whom confronted Defendant and requested he leave. Several residents testified

2

that Defendant's actions had awakened them, or otherwise had infringed upon their privacy. Testimony indicates that Defendant's loud behavior outside of his wife's unit continued from approximately 10:00 p.m. to past 10:30 p.m., notwithstanding the wife's exhortations for Defendant to leave and her informing him that she had no money to give him. Ultimately, law enforcement responded to a 911 call and encountered and arrested Defendant.

Defendant was charged with committing disorderly conduct contrary to section 877.03, Florida Statutes (2023). At trial, the State proceeded on a theory of disorderly conduct that Defendant "affected the peace and quiet of persons who witnessed the act or acts." At the conclusion of the State's case, and again after Defendant testified, the defense moved for a JOA. Both motions were denied. The case then went to the jury. In relevant part, the jurors were instructed that, to prove the crime of disorderly conduct, the State must prove beyond a reasonable doubt that Defendant "affected the peace and quiet of persons who witnessed the act or acts." The jury found Defendant guilty of disorderly conduct. The trial court sentenced him to sixty days in jail. This appeal follows.

**Analysis**

We review the denial of a JOA motion de novo. *Lewis v. State*, 50 So. 3d 86, 87 (Fla. 4th DCA 2010).

Florida's "breach of the peace; disorderly conduct" statute provides:

> **Whoever commits such acts as are of a nature to** corrupt the public morals, or outrage the sense of public decency, or **affect the peace and quiet of persons who may witness them**, or engages in brawling or fighting, **or engages in such conduct as to constitute a breach of the peace or disorderly conduct**, shall be guilty of a misdemeanor of the second degree . . . .

§ 877.03, Fla. Stat. (2023) (emphasis added).

Defendant moved for JOA on the basis the evidence was insufficient to prove disorderly conduct. Specifically, Defendant argued he had not uttered any fighting words or words to incite a breach of peace. Defendant repeats this argument on appeal, quoting from *State v. Saunders*, 339 So. 2d 641 (Fla. 1976), to limit the application of the disorderly conduct statute to apply to "no words except 'fighting words' or words like shouts of 'fire' in a crowded theatre." *Id.* at 644 (Fla. 1976); *see also Barry v. State*,

3

934 So. 2d 656, 658 (Fla. 2d DCA 2006) ("[I]t is clear that speech alone will not generally support a conviction for disorderly conduct."). In seeking reversal, Defendant argues "it is certainly true that people were curios (sic) and/or annoyed by what was taking place, none were responding to [Defendant] in a way that directly threatened to breach the peace."

Defendant's initial brief and his JOA motions mischaracterize the nature of Defendant's behavior that resulted in a disorderly conduct charge and conviction. Rather than merely focusing on the words spoken, the trial court correctly viewed Defendant's "acts" and "conduct" in their totality in concluding that Defendant "engage[d] in such conduct as to constitute a breach of the peace or disorderly conduct."

In reviewing the trial court's rulings, we examine the time, place, and manner of the conduct at issue.[1] "[M]ere boisterous behavior, even if it disrupts the operations of a business and draws onlookers' attention, is not by itself enough to sustain a disorderly conduct conviction." *St. Fleury v. State*, 244 So. 3d 330, 332 (Fla. 4th DCA 2018).

**Time:** The acts occurred in the evening, with the final hallway disturbance taking place during the apartment's "quiet hours." Three residents testified that Defendant's actions had awakened them. *Cf.*, *Harbin v. State*, 358 So. 2d 856, 857 (Fla. 1st DCA 1978) (finding no disorderly conduct for an incident occurring at 3:30 p.m. in the defendant's yard, which only caused one neighbor to open her window out of curiosity as to what was happening).

**Place:** The conduct occurred in a residential apartment complex's hallway. Each floor had twelve occupied units. Resident F testified that the apartment building houses veterans, recovering addicts, and disabled individuals. Defendant had briefly lived in his wife's unit, but as the

---

[1] We recognize that section 877.03, the disorderly conduct statute, does not formally require consideration of the "time, place, and manner" of the act(s) at issue, unlike section 856.021(1), Florida Statutes (2023), the loitering or prowling statute, which states "[i]t is unlawful for any person to loiter or prowl in a place, at a time or in a manner not usual for law-abiding individuals, under circumstances that warrant a justifiable and reasonable alarm or immediate concern for the safety of persons or property in the vicinity." § 856.021(1), Fla. Stat. (2023). However, we find consideration of "time, place, and manner" useful in determining whether the acts at issue "are of a nature to . . . affect the peace and quiet of persons who may witness them . . . as to constitute a breach of the peace or disorderly conduct." § 877.03, Fla. Stat. (2023).

couple was separated and going through a divorce, Defendant was no longer a resident and did not have a working key fob to enter the building.

**Manner:** Speech as a means of communication loses its constitutional protection "when 1) by the manner of their use, the words invade the right of others to pursue their lawful activities, or 2) by their very utterance, they inflict injury or tend to incite an immediate breach of the peace." *White v. State*, 330 So. 2d 3, 7 (Fla. 1976).

"[P]rotected speech can be rendered unprotected by a defendant's additional physical actions." *Barry*, 934 So. 2d at 658. Defendant's conduct was prolonged, loud, unwelcome, harassing, and arguably threatening. He initially attempted to access his estranged wife's unit with a key fob that proved inoperable. He then commenced noisily banging on the unit's door and loudly proclaiming "b**** h*, I need money. I need – you gotta give me [] $100." Defendant's wife testified that Defendant had remained outside her door for about thirty minutes, and her doorbell camera had recorded Defendant loudly knocking on the wife's door and repeatedly using racial and sexual slurs, accusing his wife of stealing from him, and threatening to "go full force."

The door banging, demands, and slurs were overheard by other residents of that floor, interfering with their sleep and late evening activities. "Repeated banging on a door in an apartment complex at approximately 11:30 in the nighttime, thus creating a disturbance, is not such freedom of using mere words as a tool of communication that is constitutionally protected." *Williams v. State*, 340 So. 2d 498, 499 (Fla. 1st DCA 1976). *See also White*, 330 So. 2d at 7 ("It is the degree of loudness, and the circumstances in which they are uttered, which takes [shouting and screaming] out of the constitutionally protected area. Indeed, [the defendant's] conduct would have been equally disorderly had he merely recited 'Mary Had a Little Lamb' in the same tone and under similar circumstances.").

"[T]he atmosphere surrounding the incident is always relevant. There are certain exceptions, depending upon the circumstances, which, when coupled with the use of expletives will constitute a breach of the peace." *K.G. v. State*, 338 So. 2d 72, 73 (Fla. 3d DCA 1976). Here, "the circumstances" described above clearly support the trial court's ruling that Defendant's conduct "affect[ed] the peace and quiet of" the apartment residents, including Defendant's wife, who bore witness.

**Conclusion**

The actress Greta Garbo famously declared, "I want to be let alone."[2] The testimony of the apartment residents indicated a desire "to be let alone," particularly during the apartment building's quiet hours. Instead, Defendant breached their "peace and quiet." The evidence supports the jury's finding that Defendant's conduct violated section 877.03. His disruptive behavior disturbed multiple residents, prompted confrontation, and persisted despite law enforcement's warnings. The trial court properly admitted relevant evidence and did not err in denying the JOA motions.

*Affirmed.*

KUNTZ, C.J., and CONNER, J., concur.

\* \* \*

***Not final until disposition of timely filed motion for rehearing.***

---

[2] John Bainbridge, *"The Braveness to Be Herself" In Private Affairs or in Public Garbo Ignores Others' Opinions*, LIFE, Jan. 24, 1955, at 113.